**F I L E D**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI

4/21/15

**DORIAN E. RAMIREZ, CLERK**
**BY** DTello

ACCEPTED
13-13-00411-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
4/21/2015 10:23:31 PM
DORIAN RAMIREZ
CLERK

13-13-00411-CV

IN THE COURT OF APPEALS OF TEXAS
THIRTEENTH DISTRICT
CORPUS CHRISTI

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
4/21/2015 10:23:31 PM
_____DORIAN E. RAMIREZ_____
Clerk

KBREALTRON MANAGEMENT
Appellant

V.

STEPHANIE DELEON
Appellee

On Appeal from the County Court at Law #1
Travis County, Texas
Trial Court Cause No. C-1-V-12-002167

APPELLANT'S BRIEF

Kevin Bierwirth
13276 Research Blvd. Ste. 204
Austin, Texas 78750
(512) 825-0331

i

## IDENTITY OF THE PARTIES

**Appellant**

Kevin Bierwirth
13276 Research Blvd. Ste. 204
Austin, Texas 78750

**Appellee**

Stephanie DeLeon
4108 Kilgore Lane
Austin, Texas 78727

Attorney for Appellee in JP Court
and ancillary proceedings

Matthew J. Wagner
Hall Attorneys, P.C.
701 Brazos, Suite 500
Austin, Texas 78701

# TABLE OF CONTENTS

Identity of Parties and Counsel………………………………………………..ii

Table of Contents………………………………………………………..iii

Table of Authorities…………………………………………………..v

Statement of Jurisdiction……………………………………………..1

Statement of the Case…………………………………………..……………1

Issues Presented…………………………………………………………1

ISSUE 1
DID APPELLANT PROVE THAT HE WAS ENTITLED TO THE RELIEF REQUESTED?

ISSUE 2
DID THE PRESIDING JUDGE VIOLATE CANONS OF THE TEXAS CODE OF JUDICIAL CONDUCT

ISSUE 3
WAS APPELLANT DENIED DUE PROCESS BY A JUDGE WHO WAS BIASED AND PREJUDICED

Statement of Facts…………………………………………………..2

Summary of Argument………………………………………………….5

Arguments and Authorities…………………………………………………6

Conclusion……………………………………………………….16

Prayer…………………………………………………………..16

Certificate of Service………………………………………………17

Certificate of Compliance…………………………………………………17

Appendix

# TABLE OF AUTHORITIES

Cases

*In re Thoma*, 873 S.W.2d 477, (Tex.1994)..............................................15

*United States v. Bray*, 546 F.2d 851 (10th Cir. 1976)...........................14

*United States v. Haywood*, 411 F.2d 555 (5th Cir. 1969).......................14

*United States v. Lanham*, 416 F.2d 1140 (56th Cir. 1969)......................14

*Vaughn v. State,* 3 Tenn.Crim.App. 54, 456 S.W.2d 879, 883.....................15

Statutes

Texas Civil Practice & Remedies Code §51.012........................................1

Texas Local Government Code §192.001................................................1

Constitution

Texas Constitution, Art. 1, Sec. 13...................................................15

Texas Constitution, Art. 1, Sec. 19...................................................15

Texas Constitution, Art. 5, Sec. 6......................................................1

Authorities

Texas Code of Judicial Conduct, Canon 1 and Canon 2.............................6

## STATEMENT OF JURISDICTION

This Court has jurisdiction of the appeal because Appellant appeals a final Judgment from the Travis County Court at Law #1, Travis County, Texas. Texas Civil Practice & Remedies Code §51.012, Texas Local Government Code §192.001, and Texas Constitution, Art. 5, Sec. 6.

This Court has jurisdiction concerning appeal of forcible detainer proceedings, Texas Property Code, Chapter 51.

## STATEMENT OF THE CASE

This is an appeal of a Motion for Possession of Property and Unpaid Rent from County Court which was preceded by an action for forcible detainer from the justice court. The trial occurred on February 2, 2012 and judgment was rendered on February 2, 2012 and timely appealed.

## ISSUES PRESENTED

### ISSUE 1
DID APPELLANT PROVE THAT HE WAS ENTITLED TO THE RELIEF REQUESTED?

### ISSUE 2
DID THE PRESIDING JUDGE VIOLATE CANONS OF THE TEXAS CODE OF JUDICIAL CONDUCT

### ISSUE 3
WAS APPELLANT DENIED DUE PROCESS BY A JUDGE WHO WAS BIASED AND PREJUDICED

1

# STATEMENT OF FACTS

Kevin Bierwirth d/b/a/ KBRealtron Management, (hereinafter Appellant) is a man who, after suffering an economic downturn, studied and became very aware of the rampant fraud in mortgage foreclosures and, as a result, has availed himself of his due process rights in fighting mortgage fraud in his own cases.

As a result of his actions in the courts against unlawful acts, such a robo-signing, incomplete chain of title, etc., attorneys for mortgage companies have libeled and slandered his name. These very same bar card members have access to and relationships with the bar card carrying attorneys who have attained the rank of judge.

There is no way that Appellant can successfully staunch the rumor campaign which takes place behind his back. It is however, a fact that it is practiced and it is a fact that the rumors have an effect on the opinions of the judges.

Appellant believes that the Court will see the expression of that prejudice in his appeal.

Appellant has, for many years, had a d/b/a of KBRealtron Management. In this capacity, Appellant manages rental properties for landlords and sometimes for his own properties. It was in the latter capacity that he leased a property to Appellee.

2

Before Appellee signed the lease, (**CR p.146-159, RR Vol. 2, Plaintiff's Exhibit 1, RR Vol. 3**), Appellee was fully informed that the property had been the subject of a foreclosure, which was on appeal, and that should Appellant lose possession, she would have to vacate the premises on short notice which would automatically facilitate the return of her deposit.

Appellee, after having the benefit of full disclosure, nonetheless elected to lease the premises.

Appellant inadvertently mislaid the $1200 certified check for the deposit, notified the Appellee and she cancelled the check. These were to be the only funds Appellant was to receive for the duration of time Appellee occupied the premises.

Appellee refused to make payments pursuant to the lease, and after notice to Appellee, Appellant filed for forcible detainer. Appellee hired an attorney, Matthew J. Wagner, to defend her position at the forcible detainer case at the Justice level. It is clear from Wagner's pleadings, (**CR page 173-181**), that he had no understanding of possessory interest in real property.

The law is clear, there are two issues in real property, one the right to title and, two, the right of possession. Appellant had never been removed from possession, and maintained the legal right to lease the property. Mr. Wagner's argument prevailed at the JP level and the case was appealed to county court, for a trial *de novo*.

3

Mr. Wagner was told on two separate occasions by district judges in a concurrent case that he was mistaken as to the possession issue. The judges told Mr. Wagner that as long as Appellant maintained his possessory interest, he could rent, lease, let sit idle, or anything else he chose to do with the property.

Mr. Wagner apparently finally got the message and withdrew as Appellee's counsel on August 15, 2012. **(CR page 311-313)**

Appellee resided in the property from December 17, 2011, **(CR page 267 line 20),** to sometime in April of 2012.

Appellee executed a lease on the property on November 23, 2011. (R**R Vol. 3 page 14)**

Appellee acknowledged that before signing the lease she was informed that the house was in a foreclosure process. **(CR page 270, line 19-25)**

Appellee testified that she was informed of the legal status of the property before she signed the lease.

Appellee agreed to all the conditions and did, in fact, sign the lease.

Appellee lived in the property from December 17, 2011 to April 1, 2012 and did not pay any consideration whatsoever towards the lease commitment.

Appellant is due and owing the judgment pled for at the county court.

4

## SUMMARY OF ARGUMENT

Appellant filed a forcible detainer suit against Appellee. Appellant had a signed lease and Appellee breached the contract. Appellee refused to pay and refused to leave.

Appellant had evidence of the lease, and Appellee testified that she had not paid Appellant any of the monies prescribed in the lease.

Appellant filed the original petition and appealed to a *de novo* court, having full faith the legal system that would find that Appellee had breached the contract, and as result, would be ordered to pay.

Appellant did not believe he would be denied his rights and remedy, as the case was so clear cut.

Instead, Appellant was treated with contempt, disdain and an outright show of hatred on the part of the appellate judge, J. David Phillips. Judge Phillips called Appellant a liar and a thief in open court, although there is no evidence in the record that Appellant had lied or stolen from anyone, and, as a consequence of his personal prejudice, Judge Phillips denied him relief. Instead, Judge Phillips made it clear that Appellee could breach the contract and not be held liable because she had leased a property from a man that Judge Phillips personally reviled.

There is not and should not be a place in Texas jurisprudence where this is allowed to transpire.

## ISSUE 1
## DID APPELLANT PROVE THAT HE WAS ENTITLED TO THE RELIEF REQUESTED?

At trial, Appellant provided evidence that Appellee had signed a lease, Appellee had occupied the property for close to four months and Appellee had paid no consideration whatsoever, an obvious breach of the contract.

Appellant provided the Court with the amount due and owing on the contract.

Appellant proved to the Court that he was entitled to the relief requested.

## ISSUE 2
## DID THE PRESIDING JUDGE VIOLATE CANONS OF THE TEXAS CODE OF JUDICIAL CONDUCT

Canon 1:    An independent and honorable judiciary is indispensable to justice in our society.  A judge should participate in establishing, maintain, and enforcing high standards of conduct, and should personally observe those standards so that the integrity and independence of the judiciary is preserved.  The provisions of this Code are to be construed and applied to further that objective.

Canon 2:  Avoiding Impropriety and the Appearance of Impropriety in All of the Judge's Activities.
A.    A judge shall comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

It is evident from the transcript of this trial that Judge J. David Phillips held absolute enmity and contempt for Appellant from the beginning to the end of the hearing.

It was further obvious that because of his personal disdain for Appellant, Judge Phillips, in order to maintain the integrity of the Court, should have recused himself. Instead, Judge Phillips used the Court to vilify, embarrass and further torture Appellant. Appellant asserts the rationale behind Judge Phillips enmity was based on circulating rumors and previous litigation.

In the transcript of the case, Appellant is testifying as to the attempts to induce Appellee to pay her deposit and rent, and states, at **RR Vol. 2**, beginning on **page 6, and continuing through page 7**:, "According to my bank, she was missing numbers or she didn't do it properly or whatever, and my bank felt like she was doing it purposely.

THE COURT: Your bank felt like it was purposely?

MR. BIERWIRTH: I have a letter—

THE COURT: If I go kick your bank, is it going to say ouch?

MR. BIERWIRTH: I'm sure they will. I have a letter here saying – that I will put as evidence. And that was just for the deposit only.

THE COURT: So where does it say your bank feels like it was being done purposely?

MR. BIERWIRTH: Well, I thought it was in that letter.

THE COURT: The truth, please. The truth.

MR. BIERWIRTH: The credit transaction amount – okay.

7

THE COURT: Not there.

MR. BIERWIRTH: My mistake. They just said it was invalid account numbers, HCHR transaction code, which I don't know what it means. Unless it was not getting through electronically.

THE COURT: Right.

Although it was discussed and exhibited in the hearing, the letter was not entered into evidence in the court because Appellant felt badgered and forgot to do so.

The transcript further reflects the acerbic attitude and demeanor of the judge:

In **RR Vol. 2 page 8**: THE COURT: Will you just tell me the story why she owes you money, please?

MR. BIERWIRTH: For nonpayment of rents.

THE COURT: How much? How much rent did she not pay?

MR. BIERWIRTH: From...

THE COURT: It's very entertaining to have to drag everything out of you, but it's a waste of time.

(At that point, Appellant knew it was pointless to go on, obviously Judge Phillips intended to rule against him.)

MR. BIERWIRTH: I'm sorry. From December 16th to – it looks like to 4-1-2012.

8

THE COURT:     What happened on 4-1-2012?

MR. BIERWIRTH:  4-1-2012, she – actually let me – I have some notes that I can track.   She moved out without notice to me – without written notice, and I believe that was sometime a little after April.   But when I discovered she moved out in April, we went in and cleaned up the property and had it painted.

THE COURT:  So you're only asking for rent April 1st, which is when she vacated?

MR. BIERWIRTH:  From December to April 11th, yes sir.   And I don't know if we can –

THE COURT:     Do you have a copy of the lease?

MR. BIERWIRTH:  Yes, sir, I do.

THE COURT:  Do you want to put it into evidence?

MR. BIERWIRTH:  Yes, sir.

In **RR Vol.2, page 18, lines 1-3**, the judge establishes that Appellee owes at least $2435.

**RR. Vol. 2, page 22**: Bierwirth questioning DeLeon:

Q. (Bierwirth):     And that is a legal binding contract.   You're aware of that, correct?

A. (DeLeon:       I'm not aware, no.

9

Q.      Didn't you state in Ms. Triana's court that it was, in fact, a legal – you understood it was a legal binding contract?

A.      I understand that leases are legal binding contracts.

MR. BIERWIRTH:  Nonresponsive, Your Honor.

THE COURT:  Would you let her answer it—

MR. BIERWIRTH:  She's not answering it.

THE COURT:  --before you start talking?  She said she understands that leases are legal binding contracts.

MR. BIERWIRTH:  Okay.

THE COURT:  You're trying to fool me or what?

MR. BIERWIRTH:  No, sir, I'm just trying to –

THE COURT:  I know what her answer is.  Her answer is, she thought it was a legal contract when she signed it.

**RR Vol. 2, page 23 lines 8-13**:

Q.      Have you paid any funds, any money?

A.      At this time no funds have been actually paid.  Only attempted.

Q.      How long did you stay at the property?

A.      From December 17th, 2011, through March – I'm sorry, April 1st, 2012.

Q.     Okay. Isn't it true that you filed a motion for summary judgment and the judge had ruled that I did have a right to the property and I did have a right to collect the monies for the property, and whether it was foreclosed or not, as long as I had possession of the property?

A.     The judge – there were some ruling, yes. I'm not that familiar. I have to reread all the documents.

**RR Vol. 2, page 24, line 15:**

THE COURT:  Any other evidence for your side, Mr. Bierwirth?

MR. BIERWIRTH; Well, I'd like to put in that order here (the summary judgment order) ---actually, I believe here it is. Put in the order denying the summary judgment.

THE COURT:  Orders denying motion for summary judgment don't say anything other than the motion is denied.

MR. BIERWIRTH:  Okay.  Well, I have the summary judgment as well if you would like to read it if it interests you.

THE COURT:  Denied.  It doesn't mean the judge agreed with you.  Just some fault in the motion.

MR. BIERWIRTH:  Yes, sir.

THE COURT:  All right.  Anything else?

MS. DELEON:  No,  Your Honor.

11

THE COURT: Okay. I am reminded of an old Woody Guthrie song called "Pretty Boy Floyd", by golly. Pretty Boy Floyd was kind of a hero in Oklahoma because he robbed banks, and banks were kind of mean to people at that time. Part of the song says, "As through this world you travel, you see some funny men. Some will rob you with a six-gun and some with a fountain pen." Ain't that the truth.

(Although the record does not reflect this, Judge Phillips actually played the Woody Guthrie song in the court.)

And you're one of them, Mr. Bierwirth. How dare you rent something to somebody when it's been foreclosed on and you've already given a deed to the bank? How dare you?

MR. BIERWIRTH: I didn't. They have not – I still have possession of the property, and they have not tried --.

THE COURT: You don't have possession of the property. Judge Cooper wrote an order that says this order will act as writ of possession for the property for the bank and that bank has now transferred it to somebody else, to the FDIC or Fannie May or somebody.

(Judge Phillips is speaking of a summary judgment which had occurred in district court early in the case and was not in evidence in the Court at the time. Obviously, Judge Phillips had perused other records and fed his flames of

12

prejudice by taking into account matters which were not before him for adjudication.)

MR. BIERWIRTH: No, sir.

THE COURT: And you pretend that you have the right to possession of the property?

MR. BIERWIRTH: I do have a right to possession of the property.

THE COURT: Because it's been foreclosed on and transferred to two other banks and your right to possession is?

MR. BIERWIRTH: It hasn't been transferred, Your Honor. And I have –

THE COURT: Well, according to the deed records it has.

MR. BIERWIRTH: Your Honor, I have – I have a book like this. And when Ms. DeLeon rented the property, the bank was in litigation, as I told her before she moved in. And I also told her that they haven't had gotten possession, nor did they file for possession or anything.

THE COURT: I think you're a liar and a thief. Just to get that off my chest. I think you're a liar and a thief. And she gets judgment in this case, and I assess all cost against you. You can be excused.

MS. DELEON: Thank you, Your Honor.

THE COURT: I'll write you up an order if you want to stay.

MS. DELEON: I would very much appreciate that.

13

THE COURT: There's one for each of today's contestants. There's a judgment for you that says plaintiff take nothing and defendant have her costs.

The Motion before the Court was a Motion for Possession of Property and Unpaid Rent.. **CR page 320-322**.

Appellant presented a bona fide lease. Appellee testified that she had lived on the property the subject of the lease, that she had full disclosure of the foreclosure before she moved in and that she hadn't paid a cent the entire time she occupied the property.

It is clear that Appellee breached the contract.

That was the matter before the court.

"The comments of the trial judge, which tainted appellant's presumption of innocence in front of the venire, were fundamental error of constitutional dimension and required no objection." *United States v. Bray*, 546 F.2d 851 (10th Cir. 1976); *United States v. Lanham*, 416 F.2d 1140 (56th Cir. 1969)(actions of trial judge who improperly injected himself into role of prosecutor during trial destroyed neutrality and impartiality of trial atmosphere, defendant's credibility, and defendant's presumption of innocence, and constituted plain error); *United States v. Haywood*, 411 F.2d 555 (5th Cir. 1969).

Texas Constitution, Art. 1, Sec. 13. Remedy by due course of law. All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

Texas Constitution, Art. 1, Sec. 19. No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

It is an adage as old as time that a participant in a judicial hearing is entitled to a fair and independent law giver, whether it be a judge or a jury.

"Aside from all else, 'due process' means fundamental fairness and substantial justice. *Vaughn v. State*, 3 Tenn.Crim.App. 54, 456 S.W.2d 879, 883." Black's Law Dictionary, 6th Edition, page 500.

It is axiomatic that an independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining,, and enforcing, and should observe high standards of conduct so that the integrity and independence of the judiciary is preserved. *In re Thoma*, 873 S.W.2d 477, (Tex.1994).

Appellant asserts that Judge Phillips, after being presented with the evidence of a lease and the testimony of a breach of that lease, denied him due process by sanctioning the conduct of the tortfeasor. Judge Phillips conduct was intentional and willful and resulted in an unfair ruling which damaged Appellant.

There is no evidence before this Court, just as there was no evidence before Judge Phillips, that Appellant was "a liar and a thief". Appellant filed in the Court for due process, believing that, even though he had been previously exposed to Judge Phillips' extreme rancor, he would nevertheless receive the benefit of the law. Instead, Judge Phillips denied Appellant his remedy and is so doing, threw due process out the window.

## CONCLUSION

Kevin Bierwirth presented evidence to the Court that he and Stephanie DeLeon had signed a valid lease for the property at 3305 Spaniel Drive, Austin, Texas 78759, Ms. DeLeon occupied the property and Ms. DeLeon had breached the contract by not paying any monies whatsoever, as the lease required. Appellee still owes Appellant the defaulted payments and fees required by the contract. Appellant was entitled to payment as a matter of law, and because of his bias, Judge J. David Phillips erred when he refused to find in Appellant's favor.

## PRAYER

Appellant prays that this Court find in Appellant's favor, reverse the judgment of the Travis County Court at Law #1 and render a judgment in favor of Appellant for $10,055.42 plus attorney's fees in the amount of $2,500.00.

16

Respectfully submitted,

KBRealtron Management by
Kevin Bierwirth

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of Appellant's Brief was sent by United States Postal Service on April 21, 2015 to:

Stephanie DeLeon
4108 Kilgore Lane
Austin, Texas 78727

## CERTIFICATE OF COMPLIANCE

I, Kevin Bierwirth, the undersigned, do hereby certify that the number of words in his Appellant's Brief is 3,297 words.

# APPENDIX

EXHIBIT 1
Judgment

EXHIBIT 2
Reporter's Record Vol. 2

EXHIBIT 3
Reporter's Record Vol. 3

EXHIBIT 4
Excerpts from Clerk's Record



# EXHIBIT 1

C-1-CV-12-002167

| KB REALTRON MANAGEMENT, | § | IN THE COUNTY COURT |
| Plaintiff | § | |
| VS. | § | AT LAW NUMBER 1 |
| STEPHANIE DeLEON, | § | |
| Defendant | § | TRAVIS COUNTY, TEXAS |

FILED FOR RECORD
2013 JUN 10 AM 9:43
DANA DEBEAUVOIR
COUNTY CLERK
TRAVIS COUNTY, TEXAS

## JUDGMENT

Be it remembered that on the 10TH day of June, 2013, appeared both plaintiff and defendant and announced ready for trial. The Court heard evidence in open court and was of the opinion that the evidence failed to show that Plaintiff should recover from Defendant.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff, KB Realtron, take nothing from Stephanie DeLeon, and that all costs of court are taxed against Plaintiff. This is a final and appealable judgment.

Signed this the 10TH day of June, 2013.

_____
J. David Phillips, Judge

FILED FOR RECORD
2013 JUN 10 AM 9:48
DANA DEBEAUVOIR
COUNTY CLERK
TRAVIS COUNTY, TEXAS

328

# EXHIBIT 2

REPORTER'S RECORD

VOLUME 2 OF 3 VOLUMES

TRIAL COURT CAUSE NO. C-1-CV-12-002167

COURT OF APPEALS NO. 13-13-00411-CV

| KB REALTRON MANAGEMENT | ) | IN THE COUNTY COURT |
| | ) | |
| VS. | ) | AT LAW NO. 1 |
| | ) | |
| STEPHANIE DELEON | ) | TRAVIS COUNTY, TEXAS |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

MOTION - WRIT OF POSSESSION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

On the 10th of June, 2013, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable J. David Phillips, Judge presiding, held in Austin, Travis County, Texas:

Proceedings reported by machine shorthand.

A P P E A R A N C E S

PLAINTIFF APPEARING PRO SEE:

    Mr. Kevin Bierwirth
    13276 Research Boulevard, Suite 204
    Austin, Texas   78750


DEFENDANT APPEARIING PRO SE:

    Ms. Stephanie DeLeon
    4108 Kilgore Lane
    Austin, Texas   78727

INDEX

VOLUME 2

Motion - Writ of Possession

June 10, 2013

| | PAGE | VOL. |
|---|---|---|
| Announcements. . . . . . . . . . . . . . . . . . . . | 4 | 2 |

| Plaintiff's Witnesses | Direct | Cross | Voir Dire | Vol. |
|---|---|---|---|---|
| KEVIN BIERWIRTH | 5 | | | 2 |

| Defendant's Witnesses | Direct | Cross | Voir Dire | Vol. |
|---|---|---|---|---|
| STEPHANIE DELEON | 15 | 21 | | 2 |

| | PAGE | VOL. |
|---|---|---|
| Court's Ruling. . . . . . . . . . . . . . . . . . . . | .26 | 2 |
| Adjournment. . . . . . . . . . . . . . . . . . . . | 27 | 2 |
| Court Reporter's Certificate. . . . . . . . . . . . | .28 | 2 |

ALPHABETICAL INDEX OF WITNESSES

| | Direct | Cross | Voir Dire | Vol. |
|---|---|---|---|---|
| BIERWIRTH, KEITH | | | | |
| By Mr. Bierwirth | 5 | | | 2 |
| DELEON, STEPHANIE | | | | |
| By Ms. Deleon | 15 | | | 2 |
| By Mr. Bierwirth | | 21 | | 2 |

EXHIBITS OFFERED BY THE PLAINTIFF

| EXHIBIT | DESCRIPTION | OFFERED | ADMITTED | VOL. |
|---|---|---|---|---|
| 1 | Lease | 9 | 9 | 2 |

# PROCEEDINGS

## June 10, 2013

THE COURT: I call Cause No. C-1-CV-12-002167, KB Realtron Management versus Stephanie DeLeon. You are Mr. --

MR. BIERWIRTH: Kevin Bierwirth.

THE COURT: What kind of business?

MR. BIERWIRTH: D/b/a sir.

THE COURT: A personal d/b/a?

MR. BIERWIRTH: Yes, sir.

THE COURT: And Ms. Stephanie DeLeon appears for the other side.

MS. DELEON: Yes, sir.

THE COURT: We're here on JP appeal of some kind.

Yes, sir, Mr. Bierwrith, who is your first witness?

MR. BIERWIRTH: No witness, sir. I have submitted an affidavit contested to the facts of the matter. And KB Realtron Management is looking for a motion for possession of property in unpaid rents. Now the --

THE COURT: What evidence do you want to present?

MR. BIERWIRTH: Well, we have --

THE COURT: Somebody is going to need to testify.

MR. BIERWIRTH: I have a lease that Ms. DeLeon has, in fact, rented the property.

THE COURT: Raise your right hand, please, sir.

(Witness sworn.)

THE COURT: Looks like you need an auxiliary notebook.

MR. BIERWIRTH: Yes, sir. It has gotten huge.

THE COURT: They sell those at the Home Depot -- or the Office Depot.

MR. BIERWIRTH: Looks like I'll just have to take some of them out.

You may have a copy of this already.

THE COURT: My name is . . .

MR. BIERWIRTH: Your Honor --

THE COURT: Tell me the story please, sir. My name is . . .

**KEVIN BIERWIRTH,**

having been first duly sworn, testified as follows:

**DIRECT EXAMINATION**

MR. BIERWIRTH: My name is Kevin Bierwirth. I'm here for KB Realtron Management.

THE COURT: You're the owner of KB Realtron Management. All right. Go ahead.

MR. BIERWIRTH: Okay. And Ms. DeLeon back in December -- let me see the lease. Back in December, I believe around the 14th, had leased a property from me.

THE COURT: A property that you own?

MR. BIERWIRTH: Yes. 16th of December of 2011.

THE COURT: 2011?

MR. BIERWIRTH: Yes, sir.

THE COURT: Okay.

MR. BIERWIRTH: She paid a deposit with a cashier's check and then cancelled it later due to the fact that I misplaced it. So I've never gotten the deposit nor first month's rent from Ms. DeLeon.

THE COURT: At your request she cancelled it because you lost it?

MR. BIERWIRTH: Yes, sir.

THE COURT: And then she never replaced it?

MR. BIERWIRTH: Never replaced it. There was several attempts that we tried to get with her to replace that. She kept trying to do a, supposedly, electronic transfer. According to my bank, she was

missing numbers or she didn't do it properly or whatever, and my bank felt like she was doing it purposely.

THE COURT: Your bank felt like it was purposely?

MR. BIERWIRTH: I have a letter --

THE COURT: If I go kick your bank, is it going to say ouch?

MR. BIERWIRTH: I'm sure they will. I have a letter here saying -- that I will put as evidence. And that was just for the deposit only.

THE COURT: So where does it say your bank feels like it was being done purposely?

MR. BIERWIRTH: Well, I thought it was in that letter.

THE COURT: The truth, please. The truth.

MR. BIERWIRTH: The credit transaction amount -- okay.

THE COURT: Not there.

MR. BIERWIRTH: My mistake. They just said it was invalid account numbers, HCHR transaction code, which I don't know what that means. Unless it was not getting through electronically.

THE COURT: Right.

MR. BIERWIRTH: Okay.

THE COURT: So you don't get your $1,200 deposit?

MR. BIERWIRTH: Correct. Yes, sir. In that process, we've contacted Ms. DeLeon on several times to collect the rents behind and replenish the deposit. And on those several occasions, we've been unsuccessful. So we filed an eviction suit in Judge Bass' court. Bass has ruled in defendant's favor.

THE COURT: I'm sorry. Bass what?

MR. BIERWIRTH: He ruled in defendant's favor. I appealed that case here to the county court. Mr. Jeffrey Kelly was representing me. This actually had been moved -- or case was filed in district court and went through to district proceedings.

THE COURT: Will you just tell me the story why she owes you money, please?

MR. BIERWIRTH: For nonpayment of rents.

THE COURT: How much? How much rent did she not pay?

MR. BIERWIRTH: From --

THE COURT: It's very entertaining to have to drag everything out of you, but it's a waste of time.

MR. BIERWIRTH: I'm sorry. From December 16th to -- it looks like to 4-1-2012.

THE COURT: What happened on 4-1-2012?

MR. BIERWIRTH: 4-1-2012 she -- actually let me -- I have some notes that I can track. She moved out without notice to me -- without written notice, and I believe that was sometime a little after April. But when I had discovered she moved out in April, we went in and cleaned up the property and had it painted.

THE COURT: So you're only asking for rent April 1st, which is when she vacated?

MR. BIERWIRTH: From December to April 11th, yes, sir. And I don't know if we can --

THE COURT: Do you have a copy of the lease?

MR. BIERWIRTH: Yes, sir, I do.

THE COURT: Do you want to put it into evidence?

MR. BIERWIRTH: Yes, sir.

THE COURT: Plaintiff's Exhibit 1, the lease, is offered into evidence. Do you have any objection?

(Plaintiff's Exhibit No. 1 offered.)

MS. DELEON: No, objection, Your Honor.

THE COURT: Plaintiff's 1 admitted into the evidence.

(Plaintiff's Exhibit No. 1 admitted.)

THE COURT: KB Realtron Management.

Unusual to see a management company as a landlord.

MR. BIERWIRTH: Yes, sir.

THE COURT: But you are the landlord?

MR. BIERWIRTH: Well, I had an agent, but she had court today, this morning.

THE COURT: I'm sorry. What?

MR. BIERWIRTH: I have an agent, but she had court this morning.

THE COURT: Primary term. 3305 Spaniel. And it was a one-year lease.

All right. What else do you need tell me?

MR. BIERWIRTH: I was also looking for attorney's fees. Mr. Kelly first started this case with an attorney retainer of 2500.

THE COURT: All right.

MR. BIERWIRTH: And I have also filed with the court a break down of running totals of the expenses of the property. And I'm asking for those expenses as well. Also for nonpayment of rent.

THE COURT: What expenses?

MR. BIERWIRTH: We have storage fees.

THE COURT: Storage? For what?

MR. BIERWIRTH: I exercised that landlord lien for nonpayment of rent and took possession of the personal properties and have months of storage fees for

that.  We have --

THE COURT:  Where's the property now, still in the storage?

MR. BIERWIRTH:  No, sir.

THE COURT:  What happened to it?

MR. BIERWIRTH:  Property was sold.  And that is minus off the bottom line of what I got for the property.

THE COURT:  How was it sold?

MR. BIERWIRTH:  Sir?

THE COURT:  How was it sold?

MR. BIERWIRTH:  Well, some of it was sold on Craig's List and some of it was on -- people that were known -- that were interested in the property.

THE COURT:  That were known?  Sold it to your friends?

MR. BIERWIRTH:  Not necessarily friends. People that I've known that I used to work for or something like that.

THE COURT:  So when you took the property, did you leave a written notice of --

MR. BIERWIRTH:  Yes.  Yes, sir, we have that right here.

THE COURT:  All right.

MR. BIERWIRTH:  Everything was done

properly. Actually, I can't remember the judge next door to you. They had tried to do a replevin. The judge next door told him they were to put so much money into the court registry and that if they didn't by a certain time that I had a right to sell the property.

THE COURT: You wanted them to post a bond to recover the property?

MR. BIERWIRTH: Yes. Yes, sir. I believe the bond was over -- I don't quite remember, but I believe it was close to 8,000 if not more. And then she was to put up the $1200.

THE COURT: Okay. What else do you want to tell me?

MR. BIERWIRTH: I believe that's everything.

THE COURT: Ms. DeLeon, do you have any questions for Mr. Bierwirth?

MS. DELEON: I would like an opportunity to refute the facts, but I have no questions.

THE COURT: Anything else that you think he knows that I ought to hear?

MS. DELEON: No, sir. I have a very different version.

THE COURT: Thank you. You may step down, sir.

Any other evidence on your side, Mr. Bierwirth?

MR. BIERWIRTH: No, sir. Not unless you would like a list of -- inventory list.

THE COURT: I don't like anything. Do you want to put it into evidence or not?

MR. BIERWIRTH: No, sir.

THE COURT: All right. I like that even better. I said I don't like anything. I like it when you choose not to put it in evidence.

All right. Next. Ma'am, your side. Raise your right hand, please.

(Witness sworn.)

THE COURT: Oh, one more question for you, Mr. Bierwirth. Before you sold the property, did you give notice to the tenant that you were going to have a sale?

MR. BIERWIRTH: Yes.

THE COURT: The date and time and place of the sale?

MR. BIERWIRTH: Yes, sir.

THE COURT: And it -- but you said you didn't have a sale.

MR. BIERWIRTH: Originally we had -- originally I sent her a notice of a date and time of the

sale, where it was going to be sold. And when the -- when judge -- may you tell me his name next door?

THE COURT: Shepperd.

MR. BIERWIRTH: Judge Shepperd had told me that I could sell the property if she didn't put money in the court registry and that I had a right to sell it. I just assumed that I had a right to just go ahead and sell it.

THE COURT: You don't have to follow the rules?

MR. BIERWIRTH: Well, I thought I did follow the rules since I've already sent her notice that I was selling it.

THE COURT: You sent her notice of a sale, but then you went to court and the judge set conditions. So there's no sale going on. And you didn't send her notice of another day of sale?

MR. BIERWIRTH: No, sir.

THE COURT: And you didn't have a sale. You just farmed it out to your buddies?

MR. BIERWIRTH: I didn't farm it out to my buddies.

THE COURT: Right.

MR. BIERWIRTH: People I know who like it or were interested in it.

THE COURT: Okay. Yes, ma'am, what's your story?

**STEPHANIE DELEON,**

having been first duly sworn, testified as follows:

**DIRECT EXAMINATION**

MS. DELEON: This property, that he claims to own, was foreclosed in a judicial foreclosure in June of 2011, and warranty deed was transferred to the bank in June of 2011 prior to him leasing the property to me. And I contend that he did not have the authority to lease the property to me in the first place.

I did give him a cashier's check for the deposit. He lost said check. I then set up arrangements, because I was out of town, to transfer the funds electronically as I had with several other landlords in the past. And I worked with his wife, Aletha Bierwirth, to set that up. She provided me the numbers, and she was required to authorize the transaction for it to take place.

The reason why it was returned from their credit union is because the deposit was written under the name of the d/b/a and their bank account was in their personal name. And that's the reason why it was returned.

MR. BIERWIRTH: Objection, Your Honor.

There's a -- there is no personal name for KB Realtron Management.  It's had an account since 2004.

THE COURT:  How is that an objection?

MR. BIERWIRTH:  Well, she just said it was a personal account.

THE COURT:  She just said it.  You don't think it's true.  How do you reckon trials would go if every time somebody on the other side said something that you didn't think was true and you said objection and explained your side?

MR. BIERWIRTH:  I'm just trying to correct.

THE COURT:  That's not an objection.

MR. BIERWIRTH:  Okay.

THE COURT:  That's, I want to tell me my side again.

MR. BIERWIRTH:  I apologize.

THE COURT:  Go ahead.

MS. DELEON:  I attempted on three different occasions to pay this deposit while I was out of town.  I had moved in the property on the 17th and was out of town for Christmas.  And when I returned on January 3rd, as I was driving back from out of town, they had asked me to go ahead and just give them cash.

THE COURT:  Who "they"?

MS. DELEON: Aletha Bierwirth had asked for me to go ahead and give them cash and I thought that was -- I never had so much trouble paying anyone before and I thought that was suspect; so I decided to look up the Travis County Tax records and then learned that they did not, in fact, own this property at all. I then confronted him about that fact and indicated that I wanted some sort of documentation that provided authorization for him to lease the property to me. Instead of providing any documentation, he entered the house while I was at work and stole $8,000 of property.

THE COURT: This is in what time?

MS. DELEON: January of 2012. I believe January 19th, if my memory serves.

THE COURT: January 2012.

MS. DELEON: So approximately one month after having moved in.

THE COURT: Took a bunch of property. And at that time if you owed him anything, you owed him $1200 for your deposit. And is that also the rent?

MS. DELEON: 1200 for rent and I believe there was a $35 pet rent as well.

THE COURT: So at that time --

MR. BIERWIRTH: And a partial.

THE COURT: Please stop it.

At that time you would have owed him $2435?

MS. DELEON: Yes, sir.

THE COURT: At the most. Rent for part of -- a month's rent is what you owe?

MS. DELEON: Correct.

THE COURT: And pet things. Okay. Go ahead.

MS. DELEON: I did file a police report on the matter and he then filed a suit to evict me in JP court, which Judge Bass ruled and dismissed this motion due to no legal standing in February of 2012. I moved out as soon as I possibly could, April 1st, after purchasing my own home. He then immediately entered the house and mowed the lawn and released the property.

There was -- I had an attorney at the time. There were several motions filed in court. And at one point we had been in front of the judge who asked the attorneys to make an agreement for me to put in a bond the amount of rents on a monthly basis until such time that it could be ruled on to validity of the lease and he would not agree to that.

THE COURT: Who would not agree to that?

MS. DELEON: Kevin Bierwirth and his counsel never responded.

THE COURT: You didn't put it in the registry of the court, did you?

MS. DELEON: Well, that was after he gave notice to sell the property that he took out of the house. We had made a bond to replevin to put in $8,000 to -- of a bond, and I just didn't have the money to do it. No new notice was given on the sale of the property. And the initial notice indicated that the property would be sold on eBay. There was no detail as to when or what the URL was so that I could bid on it myself. There was no way for me to attend any sort of auction for me to prepurchase my property back. And no new notice was given when he decided to then sell it by whatever means he did.

I currently don't have possession of this house at this time. He's asking for possession. I don't -- I don't have it. I can't give it to him. And I don't feel that I owe him any rent. I was very, very well prepared to pay rents to the court to whoever was authorized to receive those rents. I personally did not feel that it was Kevin Bierwirth or his management company.

Also, he has been filing appeals with the Third Court of Appeals in order to appeal this foreclosure, which has been denied, and I have a copy of

that motion in writ here. I'd like to enter this into evidence, please.

MR. BIERWIRTH: For Third Court of Appeals --

THE COURT: I'm sorry, what did you just say?

MR. BIERWIRTH: I said we're not here for the Third Court of Appeals' decision.

THE COURT: I understood that before we started.

MR. BIERWIRTH: Yes, sir.

THE COURT: What's your point?

Anyhow, he tried to appeal the judicial foreclosure, is that what he tried to appeal?

MS. DELEON: Yes. In fact, he did not file the appeal in time. And so his appeal was actually to appeal the right to appeal because his initial appeal was not filed in time. And so that has gone on for over a year now. But it's finally been declined. And I have a copy here as well.

THE COURT: Okay. That's of little interest I think. Anyhow, what else do you want to tell me?

MS. DELEON: I also have a list of the items that he removed from the house that belonged to

me.

THE COURT: I don't think you filed a counter claim, did you? If you want to get that, you're going to have to file a lawsuit for it.

MS. DELEON: Okay. Yes, sir.

THE COURT: Okay. Anything else you want to tell me?

MS. DELEON: I just feel that he did not own the house then, nor does he own it now. He has never been able to provide any sort of documentation that he ever had authority to lease the house to anyone, and I don't feel that I owe him anything.

THE COURT: Any questions for Ms. DeLeon, Mr. Bierwirth?

MR. BIERWIRTH: I do.

**CROSS-EXAMINATION**

BY MR. BIERWIRTH:

Q. Ms. DeLeon, isn't it true that you leased the property? And I know that it's been said, but I'd like for you to tell the Court that it's true that you signed the lease with KB Realtron Management to rent the property at 3305 Spaniel.

A. I signed a lease in your office and you had completed it. I did sign a lease under the -- I thought that you had the authority to lease the property.

Q. And that is a legal binding contract. You're aware of that, correct?

A. I'm not aware, no.

Q. Didn't you state in Ms. Triana's court that it was, in fact, a legal -- you understood it was a legal binding contract?

A. I understand that leases are legal binding contracts.

MR. BIERWIRTH: Nonresponsive, Your Honor.

THE COURT: Would you let her answer it --

MR. BIERWIRTH: She's not answering it.

THE COURT: -- before you start talking? She said she understands that leases are legal binding contracts.

MR. BIERWIRTH: Okay.

THE COURT: You're trying to fool me or what?

MR. BIERWIRTH: No, sir, I'm just trying to --

THE COURT: I know what her answer is. Her answer is, she thought it was a legal contract when she signed it.

THE WITNESS: I did think it was a legal contract, and I did try to uphold that contract until I felt that it was not a legal contract.

Q. (By Mr. Bierwirth) Okay. Isn't it true that you did not pay any rents for the property that you leased at 3305 Spaniel?

A. I did pay a security deposit of $1200, which you lost. I attempted on three additional separate times to pay $1200 plus the $35 pet rent, which was returned on three separate times.

Q. Have you paid any funds, any money?

A. At this time no funds have been actually paid. Only attempted.

Q. How long did you stay at the property?

A. From December 17th, 2011, through March -- I'm sorry, April 1st, 2012.

Q. Okay. Isn't it true that you filed a motion for summary judgment and the judge had ruled that I did have a right to the property and I did have a right to collect the monies for the property, and whether it was foreclosed or not, as long as I had possession of the property?

A. The judge -- there were some rulings, yes. I'm not familiar. I have to reread all the documents.

THE COURT: What judge would that be?

MR. BIERWIRTH: Fifth floor, sir, Your Honor. I probably have that order here.

THE COURT: All right. Anyway, she's

answered this question. What's your next question?

MR. BIERWIRTH: Okay. Your Honor, I believe I may -- at this time, I have no further questions.

THE COURT: All right. Anything else you'd like to add, Ms. DeLeon?

MS. DELEON: I feel the facts of the case speak for themselves. No further questions.

THE COURT: All right. Thank you.

MS. DELEON: Thank you, Your Honor. May I be dismissed?

THE COURT: Uh-huh. Any other evidence for your side, Ms. DeLeon?

MS. DELEON: No, Your Honor.

THE COURT: Any other evidence for your side, Mr. Bierwirth?

MR. BIERWIRTH: Well, I'd like to put in that order here -- actually, I believe here it is. Put in the order denying the summary judgment.

THE COURT: Orders denying motion for summary judgment don't say anything other than the motion is denied.

MR. BIERWIRTH: Okay. Well, I have the summary judgment as well if you would like to read it if it interests you.

THE COURT: Denied. It doesn't mean the judge agreed with you. Just some fault in the motion.

MR. BIERWIRTH: Yes, sir.

THE COURT: All right. Anything else?

MS. DELEON: No, Your Honor.

THE COURT: Okay. I am reminded of an old Woody Guthrie song called "Pretty Boy Floyd", by golly. Pretty Boy Floyd was kind of a hero in Oklahoma because he robbed banks, and banks were kind of mean to people at that time. Part of the song says, "As through this world you travel, you see some funny men. Some will rob you with a six-gun and some with a fountain pen." Ain't that the truth.

And you're one of them, Mr. Bierwirth. How dare you rent something to somebody when it's been foreclosed on and you've already given a deed to the bank? How dare you?

MR. BIERWIRTH: I didn't. They have not -- I still have possession of the property, and they have not tried --

THE COURT: You don't have possession of the property. Judge Cooper wrote an order that says this order will act as writ of possession for the property for the bank and that bank has now transferred it to somebody else, to the FDIC or Fannie May or

somebody.

MR. BIERWIRTH: No, sir.

THE COURT: And you pretend that you have the right to possession of the property?

MR. BIERWIRTH: I do have a right to possession of the property.

THE COURT: Because it's been foreclosed on and transferred to two other banks and your right to possession is?

MR. BIERWIRTH: It hasn't been transferred, Your Honor. And I have --

THE COURT: Well, according to the deed records it has.

MR. BIERWIRTH: Your Honor, I have -- I have a book like this. And when Ms. DeLeon rented the property, the bank was in litigation, as I told her before she moved in. And I also told her that they haven't had gotten possession, nor did they file for possession or anything.

THE COURT: I think you're a liar and a thief. Just to get that off my chest. I think you're a liar and a thief. And she gets judgment in this case, and I assess all cost against you. You can be excused.

MS. DELEON: Thank you, Your Honor.

THE COURT: I'll write you up an order if

you want to stay.

MS. DELEON: I would very much appreciate that.

THE COURT: There's one for each of today's contestants. There's a judgment for you that says plaintiff take nothing and defendant have her costs.

(These proceedings were concluded.)

STATE OF TEXAS )

COUNTY OF TRAVIS )

I, Cathy Mata, Official Court Reporter in and for the County Court at Law No. 1 of Travis County, State of Texas, do hereby certify that the foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted, tendered in an offer of proof or offered into evidence.

WITNESS MY OFFICIAL HAND this, the 23rd of September, 2013.


/s/ Cathy Mata
Cathy Mata, Texas CSR No. 6126
Expiration Date: 12/31/13
Official Court Reporter, County Court at Law No. 1
Travis County, Texas
P.O. Box 1748, Austin, Texas 78767
Telephone (512) 854-9252



EXHIBIT 3

REPORTER'S RECORD

VOLUME 3 OF 3 VOLUMES

TRIAL COURT CAUSE NO. C-1-CV-12-002167

COURT OF APPEALS NO. 13-13-00411-CV

KB REALTRON MANAGEMENT      )      IN THE COUNTY COURT

                            )

VS.                         )      AT LAW NO. 1

                            )

STEPHANIE DELEON            )      TRAVIS COUNTY, TEXAS


*******************************************************

EXHIBIT INDEX

*******************************************************


        On the 10th of June, 2013, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable J. David Phillips, Judge presiding, held in Austin, Travis County, Texas:

        Proceedings reported by machine shorthand.

A P P E A R A N C E S

PLAINTIFF APPEARING PRO SEE:

    Mr. Kevin Bierwirth
    13276 Research Boulevard, Suite 204
    Austin, Texas   78750


DEFENDANT APPEARIING PRO SE:

    Ms. Stephanie DeLeon
    4108 Kilgore Lane
    Austin, Texas   78727

INDEX

VOLUME 3

EXHIBIT INDEX


EXHIBITS OFFERED BY THE PLAINTIFF

| EXHIBIT | DESCRIPTION | OFFERED | ADMITTED | VOL. |
|---------|-------------|---------|----------|------|
| 1 | Lease | 9 | 9 | 2 |

PLAINTIFF'S EXHIBIT NO. 1



# RESIDENTIAL LEASE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED
©Texas Association of REALTORS®, Inc. 2005

1. **PARTIES:** The parties to this lease are:

   the owner of the Property, Landlord,: _Khrealtron Management_ ; and

   Tenant(s): _Stephanie DeLeon_

2. **PROPERTY:** Landlord leases to Tenant the following real property:

   Address: _3305 Spaniel Austin, TX. 78259_
   legally described as:_____

   in _Travis_ County, Texas, together with the following non-real-property
   items:_____

   The real property and the non-real-property are collectively called the "Property".

3. **TERM:**

   A. Primary Term: The primary term of this lease begins and ends as follows:

      Commencement Date: _December 16, 2011_    Expiration Date: _December 31, 2012_

   B. Delay of Occupancy: Tenant must occupy the Property within 5 days after the Commencement Date. If Tenant is unable to occupy the Property by the 5th day after the Commencement Date because of construction on the Property or a prior tenant's holding over of the Property, Tenant may terminate this lease by giving written notice to Landlord before the Property becomes available to be occupied by Tenant, and Landlord will refund to Tenant the security deposit and any rent paid. Landlord will abate rent on a daily basis for a delay caused by construction or a prior tenant's holding over. This paragraph does not apply to any delay in occupancy caused by cleaning, repairs, or make-ready items.

4. **AUTOMATIC RENEWAL AND NOTICE OF TERMINATION:**

   A. This lease automatically renews on a month-to-month basis unless Landlord or Tenant provides the other party written notice of termination not less than: (Check only one box.)
      ☐ (1) 30 days before the Expiration Date.
      ☒ (2) ___30___ days before the Expiration Date.

   B. If this lease automatically renews on a month-to month basis, it will continue to renew on a month-to-month basis until either party provides written notice of termination to the other party and the notice of termination will be effective: (Check only one box.)
      ☒ (1) on the last day of the month following the month in which the notice is given. Landlord is not obligated to prorate rent even if Tenant surrenders the Property before the termination date.
      ☐ (2) on the date designated in the notice but not sooner than 30 days after the notice is given and, if necessary, rent will be prorated on a daily basis.

(TAR-2001) 10-5-05    Tenants: _____ & Landlord or Landlord's Representative: _____    Page 1 of 14

PLAINTIFF'S
EXHIBIT
_1_
_6.10.13_



## TEXAS ASSOCIATION OF REALTORS'
## RESIDENTIAL LEASE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS® IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2005

**1. PARTIES:** The parties to this lease are:

the owner of the Property, Landlord,: _Khrealtron Management_ ; and

Tenant(s): _Stephanie DeLeon_

**2. PROPERTY:** Landlord leases to Tenant the following real property:

Address: _3305 Spaniel Austin, Tx. 78259_
legally described as:_____

in _Travis_ County, Texas, together with the following non-real-property
Items: _____

The real property and the non-real-property are collectively called the "Property".

**3. TERM:**

A. Primary Term: The primary term of this lease begins and ends as follows:

~~Initials~~ Commencement Date: _December 16, 2011_    Expiration Date: _December 31, 2012_

B. Delay of Occupancy: Tenant must occupy the Property within 5 days after the Commencement Date.
If Tenant is unable to occupy the Property by the 5th day after the Commencement Date because of
construction on the Property or a prior tenant's holding over of the Property, Tenant may terminate this
lease by giving written notice to Landlord before the Property becomes available to be occupied by
Tenant, and Landlord will refund to Tenant the security deposit and any rent paid. Landlord will abate
rent on a daily basis for a delay caused by construction or a prior tenant's holding over. This paragraph
does not apply to any delay in occupancy caused by cleaning, repairs, or make-ready items.

**4. AUTOMATIC RENEWAL AND NOTICE OF TERMINATION:**

A. *This lease automatically renews on a month-to-month basis unless Landlord or Tenant provides the
other party written notice of termination not less than: (Check only one box.)*
☐ (1) 30 days before the Expiration Date.
☒ (2) ___30___ days before the Expiration Date.

B. If this lease automatically renews on a month-to month basis, it will continue to renew on a month-to-
month basis until either party provides written notice of termination to the other party and the notice of
termination will be effective: *(Check only one box.)*
☒ (1) on the last day of the month following the month in which the notice is given. Landlord is not
obligated to prorate rent even if Tenant surrenders the Property before the termination date.
☐ (2) on the date designated in the notice but not sooner than 30 days after the notice is given and, if
necessary, rent will be prorated on a daily basis.

(TAR-2001) 10-5-05    Tenants: _SD_____ & Landlord or Landlord's Representative: _KB_____    Page 1 of 14

C. Oral notice of termination is not sufficient under any circumstances. Time is of the essence for providing notice of termination (strict compliance with dates by which notice must be provided is required). If a box is not checked under Paragraph 4A, Paragraph 4A(1) will apply. If a box is not checked under Paragraph 4B, Paragraph 4B(1) will apply.

5. RENT:

A. Monthly Rent: Tenant will pay Landlord monthly rent in the amount of $ 1,200.00 for each full month during this lease. The first full month's rent is due and payable not later than _____. Thereafter, Tenant will pay the monthly rent so that Landlord receives the monthly rent on or before the first day of each month during this lease. Weekends, holidays, and mail delays do not excuse Tenant's obligation to timely pay rent.

B. Prorated Rent: On or before December 17 Tenant will pay Landlord $_____ as prorated rent from the Commencement Date through the last day of the month in which this lease begins.

C. Place of Payment: Unless this lease provides otherwise, Tenant will remit all amounts due to Landlord under this lease to the following person or entity at the place stated and make all payments payable to the named person or entity. Landlord may later designate, in writing, another person or place to which Tenant must remit amounts due under this lease.

Name: B Khreabren Management
Address: 13276 Research #204
Austin TX. 78259
Notice: Place the Property address and Tenant's name on all payments.

D. Method of Payment:
(1) Tenant must pay all rent timely and without demand, deduction, or offset, except as permitted by law or this lease.
(2) Time is of the essence for the payment of rent (strict compliance with rental due dates is required).
(3) Unless the parties agree otherwise, Tenant may not pay rent in cash and will pay all rent by check, cashier's check, money order, or other means acceptable to Landlord.
(4) Landlord ☐ requires ☐ does not require Tenant(s) to pay monthly rents by one check or draft.
(5) If Tenant fails to timely pay any amounts due under this lease or if any check of Tenant is not honored by the institution on which it was drawn, Landlord may require Tenant to pay such amount and any subsequent amounts under this lease in certified funds. This paragraph does not limit Landlord from seeking other remedies under this lease for Tenant's failure to make timely payments with good funds.

E. Rent Increases: There will be no rent increases through the primary term. Landlord may increase the rent that will be paid during any month-to-month renewal period by providing at least 30 days written notice to Tenant.

6. LATE CHARGES:

A. If Landlord does not actually receive a rent payment in the full amount at the designated place of payment by 5:05 p.m. on the 5 day of the month in which it is due, Tenant will pay Landlord for each late payment:

(1) an initial late charge equal to (check one box only): ☐ (a) $ 40.00 ; or ☐ (b)_____ % of one month's rent; and
(2) additional late charges of $ 10 per day thereafter until rent and late charges are paid in full. Additional late charges may not exceed more than 30 days in any one month.

(TAR-2001) 10-5-05    Tenants:____,____,____ & Landlord or Landlord's Representative: ___    Page 2 of 14

B. For the purposes of paying rent and any late charges, the mailbox is not the agent for receipt for Landlord (the postmark date is not the date Landlord receives the payment). The late charge is a cost associated with the collection of rent and Landlord's acceptance of a late charge does not waive Landlord's right to exercise remedies under Paragraph 27.

7. **RETURNED CHECKS:** Tenant will pay Landlord $ 40 (not to exceed $25.00) for each check Tenant tenders to Landlord which is returned or not honored by the institution on which it is drawn for any reason, plus any late charges until Landlord receives payment. Tenant must make any returned check good by paying such amount(s) plus any associated charges in certified funds.

8. **APPLICATION OF FUNDS:** Regardless of any notation on a check, Landlord may apply funds received from Tenant first to any non-rent obligations of Tenant, including but not limited to, late charges, returned check charges, repairs, brokerage fees, periodic utilities, pet charges, and then to rent.

9. **PETS:**

A. Unless the parties agree otherwise in writing, Tenant may not permit, even temporarily, any pet on the Property (including but not limited to any mammal, reptile, bird, fish, rodent, or insect).

B. If Tenant violates this Paragraph 9 or any agreement to keep a pet on the Property, Landlord may take all or any of the following action:
(1) declare Tenant to be in default of this lease and exercise Landlord's remedies under Paragraph 27;
(2) charge Tenant, as additional rent, an initial amount of $35 and $_____ per day thereafter per pet for each day Tenant violates the pet restrictions;
(3) remove or cause to be removed any unauthorized pet and deliver it to appropriate local authorities by providing at least 24-hour written notice to Tenant of Landlord's intention to remove the unauthorized pet; and
(4) charge to Tenant the Landlord's cost to:
(a) remove any unauthorized pet;
(b) exterminate the Property for fleas and other insects;
(c) clean and deodorize the Property's carpets and drapes; and
(d) repair any damage to the Property caused by the unauthorized pet.

C. When taking any action under Paragraph 9B Landlord will not be liable for any harm, injury, death, or sickness to any pet.

10. **SECURITY DEPOSIT:**

A. Security Deposit: On or before execution of this lease, Tenant will pay a security deposit to Landlord in the amount of $ 1,200.00 . "Security deposit" has the meaning assigned to that term in §92.102, Property Code.

B. Interest: No interest or income will be paid to Tenant on the security deposit. Landlord may place the security deposit in an interest-bearing or income-producing account and any interest or income earned will be paid to Landlord or Landlord's representative.

C. Refund: Tenant must give Landlord at least thirty (30) days written notice of surrender before Landlord is obligated to refund or account for the security deposit.

**Notices about Security Deposits:**
(1) §92.108, Property Code provides that a tenant may not withhold payment of any portion of the last month's rent on grounds that the security deposit is security for unpaid rent.

(TAR-2001) 10-5-05     Tenant: _____ _____ & Landlord or Landlord's Representative: _____     Page 3 of 14

(2) Bad faith violations of §92.108 may subject a tenant to liability up to 3 times the rent wrongfully withheld and the landlord's reasonable attorney's fees.

(3) The Property Code does not obligate a landlord to return or account for the security deposit until the tenant surrenders the Property and gives the landlord a written statement of the tenant's forwarding address, after which the landlord has 30 days in which to account.

(4) "Surrender" is defined in Paragraph 16 of this lease.

(5) One may view the Texas Property Code at the Texas Legislature's website which, as of the date shown in the lower left-hand corner of this form, is www.capitol.state.tx.us/statutes/pr.toc.htm.

D. Deductions:

(1) Landlord may deduct reasonable charges from the security deposit for:
  (a) damages to the Property, excluding normal wear and tear;
  (b) costs for which Tenant is responsible to clean, deodorize, exterminate, and maintain the Property;
  (c) unpaid or accelerated rent;
  (d) unpaid late charges;
  (e) unpaid utilities;
  (f) unpaid pet charges;
  (g) replacing unreturned keys, garage door openers, security devices, or other components;
  (h) the removal of unauthorized locks or fixtures installed by Tenant;
  (i) Landlord's cost to access the Property if made inaccessible by Tenant;
  (j) missing or burned-out light bulbs and fluorescent tubes (at the same location and of the same type and quality that are in the Property on the Commencement Date);
  (k) packing, removing, and storing abandoned property;
  (l) removing abandoned or illegally parked vehicles;
  (m) costs of reletting (as defined in Paragraph 27), if Tenant is in default;
  (n) attorney's fees, costs of court, costs of service, and other reasonable costs incurred in any legal proceeding against Tenant;
  (o) mailing costs associated with sending notices to Tenant for any violations of this lease; and
  (p) any other unpaid charges or fees or other items for which Tenant is responsible under this lease.

(2) If deductions exceed the security deposit, Tenant will pay to Landlord the excess within 10 days after Landlord makes written demand.

## 11. UTILITIES:

A. Tenant will pay all connection fees, service fees, usage fees, and all other costs and fees for all utilities to the Property (for example, electricity, gas, water, wastewater, garbage, telephone, alarm monitoring systems, cable, and Internet connections) except the following which Landlord will pay: N/A

Unless otherwise agreed, amounts under this paragraph are payable directly to the service providers.

B. Unless provided by Landlord, Tenant must, at a minimum, keep the following utilities on, if available, at all times this lease is in effect: gas; electricity; water; wastewater; and garbage services.

Notice: Before signing this lease, Tenant should determine if all necessary utilities are available to the Property and are adequate for Tenant's use.

(TAR-2001) 10-5-05        Tenants: _____  _____  _____  & Landlord or Landlord's Representative: _____        Page 4 of 14

Residential Lease concerning: 3305 Spaniel

## 12. USE AND OCCUPANCY:

A. Occupants: Tenant may use the Property as a private residence only. The only persons Tenant may permit to reside on the Property during the term of this lease are (include names and ages of all occupants): Olivia DeLeon (daughter)

B. Phone Numbers: Tenant must promptly inform Landlord of any changes in Tenant's phone numbers (home, work, and mobile) not later than 5 days after a change.

C. HOA Rules: Tenant must comply with any owners' association rules or restrictive covenants affecting the Property. Tenant will reimburse Landlord for any fines or other charges assessed against Landlord for violations by Tenant of any owners' association rule or restrictive covenant.

D. Prohibitions: Unless otherwise authorized by this lease, Tenant may not install or permit any of the following on the Property, even temporarily: a spa, hot tub, above-ground pool, trampoline, or any item which causes a suspension or cancellation of insurance coverage or an increase in insurance premiums. Tenant may not permit any part of the Property to be used for: (1) any activity which is a nuisance, offensive, noisy, or dangerous; (2) the repair of any vehicle; (3) any business of any type, including but not limited to child care; (4) any activity which violates any zoning ordinance, owners' association rule, or restrictive covenant; (5) any illegal or unlawful activity; or (6) activity that obstructs, interferes with, or infringes on the rights of other persons near the Property.

E. Guests: Tenant may not permit any guest to stay on the Property longer the amount of time permitted by any owners' association rule or restrictive covenant or ___30___ days without Landlord's written permission, whichever is less.

F. Common Areas: Landlord is not obligated to pay any non-mandatory or user fees for Tenant's use of any common areas or facilities (for example, pool or tennis courts).

## 13. PARKING RULES:
Tenant may not permit more than _4_ vehicles, including but not limited to automobiles, trucks, recreational vehicles, trailers, motorcycles, all-terrain vehicles, jet skis, and boats, on the Property unless authorized by Landlord in writing. Tenant may not park or permit any person to park any vehicles in the yard. Tenant may permit vehicles to be parked only in drives, garages, designated common parking areas, or in the street if not prohibited by law or an owners' association. Tenant may not store or permit any person to store any vehicles on or adjacent to the Property or on the street in front of the Property. In accordance with applicable state and local laws, Landlord may have towed, at Tenant's expense: (a) any inoperative vehicle on or adjacent to the Property; (b) any vehicle parked in violation of this paragraph or any additional parking rules made part of this lease; or (c) any vehicle parked in violation of any law, local ordinance, or owners' association rule.

## 14. ACCESS BY LANDLORD:

A. Signs: Landlord may prominently display a "For Sale" or "For Lease" or similarly worded sign on the Property during the term of this lease or any renewal period.

B. Access: Before accessing the Property, Landlord or anyone authorized by Landlord will attempt to first contact Tenant, but may enter the Property at reasonable times without notice to make repairs or to show the Property to prospective tenants or buyers, inspectors, fire marshals, lenders, appraisers, or insurance agents. Additionally, Landlord or anyone authorized by Landlord may peacefully enter the Property at reasonable times without first attempting to contact Tenant and without notice to: (1) survey or review the Property's condition; (2) make emergency repairs; (3) exercise a contractual or statutory lien; (4) leave written notices; or (5) seize nonexempt property if Tenant is in default.

(TAR-2001) 10-5-05     Tenants: ___, ___, ___ & Landlord or Landlord's Representative: ___     Page 5 of 14

C. **Trip Charges:** If Landlord or Landlord's agents have made prior arrangements with Tenant to access the Property and are later denied or are not able to access the Property because of Tenant's failure to make the Property accessible, Landlord may charge Tenant a trip charge of $ 35.00

D. **Keybox:** A keybox is a locked container placed on the Property holding a key to the Property. The keybox is opened by a special combination, key, or programmed access device so that persons with the access device may enter the Property, even in Tenant's absence. The keybox is a convenience but involves risk (such as unauthorized entry, theft, property damage, or personal injury). Neither the Association of REALTORS® nor MLS requires the use of a keybox.

(1) Tenant authorizes Landlord, Landlord's property manager, and Landlord's broker to place on the Property a keybox containing a key to the Property:
(a) during the last 32 days of this lease or any renewal or extension; and
(b) at any time Landlord lists the Property for sale with a Texas licensed broker.

(2) Tenant may withdraw Tenant's authorization to place a keybox on the Property by providing written notice to Landlord and paying Landlord a fee of $300.00 as consideration for the withdrawal. Landlord will remove the keybox within a reasonable time after receipt of the notice of withdrawal and payment of the required fee.

(3) If Landlord or Landlord's agents have made prior arrangements with Tenant to access the Property and are later denied or are not able to access the Property because of Tenant's failure to make the Property accessible, Landlord may charge Tenant a trip charge as provided in Paragraph 14C.

(4) Landlord, the property manager, and Landlord's broker are not responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses arising from use of the keybox unless caused by Landlord, the property manager, or Landlord's broker.

## 15. MOVE-IN CONDITION:

A. Landlord makes no express or implied warranties as to the Property's condition. Tenant has inspected the Property and accepts it AS-IS provided that Landlord:_____

_____

B. Tenant will complete an Inventory and Condition Form, noting any damages to the Property, and deliver it to Landlord within 15 days after the Commencement Date. If Tenant fails to timely deliver the Inventory and Condition Form, the Property will be deemed to be free of damages, unless otherwise expressed in this lease. The Inventory and Condition Form is not a request for repairs. Tenant must direct all requests for repairs in compliance with Paragraph 18.

## 16. MOVE-OUT:

A. **Move-Out Condition:** When this lease ends, Tenant will surrender the Property in the same condition as when received, normal wear and tear excepted. Tenant will leave the Property in a clean condition free of all trash, debris, and any personal property. Tenant may not abandon the Property.

B. **Definitions:**

(1) "*Normal wear and tear*" means deterioration that occurs without negligence, carelessness, accident, or abuse.

(2) "*Surrender*" occurs when all occupants have vacated the Property, in Landlord's reasonable judgment, and one of the following events occurs:

(TAR-2001) 10-5-05     Tenants: _____ _____ _____ & Landlord or Landlord's Representative: _____     Page 6 of 14

(a) the date Tenant specifies as the move-out or termination date in a written notice to Landlord has passed; or

(b) Tenant returns keys and access devices that Landlord provided to Tenant under this lease.

(3) *"Abandonment"* occurs when all of the following occur:

(a) all occupants have vacated the Property, in Landlord's reasonable judgment;

(b) Tenant is in breach of this lease by not timely paying rent; and

(c) Landlord has delivered written notice to Tenant, by affixing it to the inside of the main entry door or if the Landlord is prevented from entering the Property by affixing it to the outside of the main entry door, stating that Landlord considers the Property abandoned, and Tenant fails to respond to the affixed notice by the time required in the notice, which will not be less than 2 days from the date the notice is affixed to the main entry door.

C. Personal Property Left After Move-Out:

(1) If Tenant leaves any personal property in the Property after surrendering or abandoning the Property Landlord may:

(a) dispose of such personal property in the trash or a landfill;

(b) give such personal property to a charitable organization; or

(c) store and sell such personal property by following procedures in §54.045(b)-(e), Property Code.

(2) Tenant must reimburse Landlord all Landlord's reasonable costs under Paragraph 16C(1) for packing, removing, storing, and selling the personal property left in the Property after surrender or abandonment.

## 17. PROPERTY MAINTENANCE:

A. Tenant's General Responsibilities: Tenant, at Tenant's expense, must:

(1) keep the Property clean and sanitary;

(2) promptly dispose of all garbage in appropriate receptacles;

(3) supply and change heating and air conditioning filters at least once a month;

(4) supply and replace all light bulbs, fluorescent tubes, and batteries for smoke detectors, carbon monoxide detectors, garage door openers, ceiling fan remotes, and other devices (of the same type and quality that are in the Property on the Commencement Date);

(5) maintain appropriate levels of necessary chemicals or matter in any water softener;

(6) take action to promptly eliminate any dangerous condition on the Property;

(7) take all necessary precautions to prevent broken water pipes due to freezing or other causes;

(8) replace any lost or misplaced keys;

(9) pay any periodic, preventive, or additional extermination costs desired by Tenant;

(10) remove any standing water;

(11) know the location and operation of the main water cut-off valve and all electric breakers and how to switch the valve or breakers off at appropriate times to mitigate any potential damage; and

(12) promptly notify Landlord, in writing, of all needed repairs.

B. Yard Maintenance:

(1) *"Yard"* means all lawns, shrubbery, bushes, flowers, gardens, trees, rock or other landscaping, and other foliage on or encroaching on the Property or on any easement appurtenant to the Property, and does not include common areas maintained by an owners' association.

(2) *"Maintain the yard"* means to perform activities such as, but not limited to: (a) mowing, fertilizing, and trimming the yard; (b) controlling pests in the yard; and (c) removing debris from the yard.

(TAR-2001) 10-5-05    Tenant: _____ , _____ & Landlord or Landlord's Representative: _____    Page 7 of 14

Residential Lease concerning: __3305 Spaniel__

(3) Tenant will water the yard at reasonable and appropriate times including but not limited to the following times: __As Needed__

_____. Other than watering, the yard will be maintained as follows:

☐ (a) Landlord, at Landlord's expense, will maintain the yard. Tenant will permit Landlord and Landlord's contractors reasonable access to the yard and will remove any pet from the yard at appropriate times.

☒ (b) Tenant, at Tenant's expense, will maintain the yard.

☐ (c) Tenant will maintain in effect a scheduled yard maintenance contract with: ☐ a contractor who regularly provides such service; ☐ _____.

C. <u>Pool/Spa Maintenance</u>: Any pool or spa on the Property will be maintained according to a Pool/Spa Maintenance Addendum.

D. <u>Prohibitions</u>: If Tenant installs any fixtures on the Property, authorized or unauthorized, such as additional smoke detectors, locks, alarm systems, cables, satellite dishes, or other fixtures, such fixtures will become the property of the Landlord. Except as otherwise permitted by law, this lease, or in writing by Landlord, Tenant may <u>not</u>:
(1)   remove any part of the Property or any of Landlord's personal property from the Property;
(2)   remove, change, add, or rekey any lock;
(3)   make holes in the woodwork, floors, or walls, except that a reasonable number of small nails may be used to hang pictures in sheetrock and grooves in paneling;
(4)   permit any water furniture on the Property;
(5)   install additional phone or video cables, outlets, antennas, satellite receivers, or alarm systems;
(6)   replace or remove flooring material, paint, or wallpaper;
(7)   install, change, or remove any: fixture, appliance, or non-real-property item listed in Paragraph 2;
(8)   keep or permit any hazardous material on the Property such as flammable or explosive materials;
(9)   keep or permit any material or item which causes any liability or fire and extended insurance coverage to be suspended or canceled or any premiums to be increased;
(10)  dispose of any environmentally detrimental substance (for example, motor oil or radiator fluid) on the Property; or
(11)  cause or allow any lien to be filed against any portion of the Property.

E. <u>Failure to Maintain</u>: If Tenant fails to comply with this Paragraph 17 or any Pool/Spa Maintenance Addendum, Landlord may, in addition to exercising Landlord's remedies under Paragraph 27, perform whatever action Tenant is obligated to perform and Tenant must immediately reimburse Landlord the reasonable expenses that Landlord incurs.

18. REPAIRS: (Notice: Subchapter B, Chapter 92, Property Code governs repair obligations).

A. <u>Repair Requests</u>: All requests for repairs must be in writing and delivered to Landlord. If Tenant is delinquent in rent at the time a repair notice is given, Landlord is not obligated to make the repair.

B. <u>Completion of Repairs</u>:

(1) Tenant may not repair or cause to be repaired any condition, regardless of the cause, without Landlord's permission. All decisions regarding repairs, including the completion of any repair, whether to repair or replace the item, and the selection of contractors, will be at Landlord's sole discretion.

(TAR-2001) 10-5-05    Tenants: _____ _____ _____ & Landlord or Landlord's Representative: _____    Page 8 of 14

(2) Landlord is not obligated to complete a repair on a day other than a business day unless required to do so by the Property Code.

C. Payment of Repair Costs: Tenant will pay Landlord or any contractor Landlord directs Tenant to pay, the first $ 120 ⁰⁰/100 of the cost to repair each condition in need of repair, and Landlord will pay the remainder, except for the following conditions which will be paid as follows.

(1) Repairs that Landlord will Pay Entirely: Landlord will pay the entire cost to repair:
    (a) a condition caused by the Landlord or the negligence of the Landlord;
    (b) wastewater stoppages or backups caused by deterioration, breakage, roots, ground condition, faulty construction, or malfunctioning equipment;
    (c) a condition that adversely affects the health or safety of an ordinary tenant which is not caused by Tenant, an occupant, a member of Tenant's family, or a guest or invitee of Tenant; and
    (d) a condition in the following items which is not caused by Tenant or Tenant's negligence:
        (1) heating and air conditioning systems;
        (2) water heaters; or
        (3) water penetration from structural defects.

(2) Repairs that Tenant will Pay Entirely: Tenant will pay Landlord or any contractor Landlord directs Tenant to pay the entire cost to repair:
    (a) a condition caused by Tenant, an occupant, a member of Tenant's family, or a guest or invitee of Tenant (a failure to timely report an item in need of repair or the failure to properly maintain an item may cause damage for which Tenant may be responsible);
    (b) damage from wastewater stoppages caused by foreign or improper objects in lines that exclusively service the Property;
    (c) damage to doors, windows, or screens; and
    (d) damage from windows or doors left open.

(3) Appliances or items that will not be Repaired: Landlord does not warrant and will not repair or replace the following: ___personal___ ___property___

D. Trip Charges: If a repair person is unable to access the Property after making arrangements with Tenant to complete the repair, Tenant will pay any trip charge the repair person may charge, which amount may be different from the amount stated in Paragraph 14C.

E. Advance Payments and Reimbursements: Landlord may require advance payment of repairs or payments under this Paragraph 18 for which Tenant is responsible. Tenant must promptly reimburse Landlord the amounts under this Paragraph 18 for which Tenant is responsible.

19. SECURITY DEVICES AND EXTERIOR DOOR LOCKS:

A. Subchapter D, Chapter 92, Property Code requires the Property to be equipped with certain types of locks and security devices. Landlord has rekeyed the security devices since the last occupant vacated the Property or will rekey the security devices within 7 days after Tenant moves in. "Security device" has the meaning assigned to that term in §92.151, Property Code.

B. All notices or requests by Tenant for rekeying, changing, installing, repairing, or replacing security devices must be in writing. Installation of additional security devices or additional rekeying or replacement of security devices desired by Tenant will be paid by Tenant in advance and may be installed only by contractors authorized by Landlord.

(TAR-2001) 10-5-05    Tenants _____, _____, _____ & Landlord or Landlord's Representative: _____    Page 9 of 14

**20. SMOKE DETECTORS:** Subchapter F, Chapter 92, Property Code requires the Property to be equipped with smoke detectors in certain locations. Requests for additional installation, inspection, or repair of smoke detectors must be in writing. Disconnecting or intentionally damaging a smoke detector or removing a battery without immediately replacing it with a working battery may subject Tenant to civil penalties and liability for damages and attorney fees under §92.2611, Property Code.

**21. LIABILITY:** Unless caused by Landlord, Landlord is not responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses to person or property caused by fire, flood, water leaks, ice, snow, hail, winds, explosion, smoke, interruption of utilities, theft, burglary, robbery, assault, vandalism, other persons, condition of the Property, environmental contaminants (for example, carbon monoxide, asbestos, radon, lead-based paint, mold, fungus, etc.), or other occurrences or casualty losses. Tenant will promptly reimburse Landlord for any loss, property damage, or cost of repairs or service to the Property caused by Tenant, Tenant's guests, any occupants, or any pets.

**22. HOLDOVER:** If Tenant fails to vacate the Property at the time this lease ends Tenant will pay Landlord rent for the holdover period and indemnify Landlord and prospective tenants for damages, including but not limited to lost rent, lodging expenses, costs of eviction, and attorneys' fees. Rent for any holdover period will be three (3) times the monthly rent, calculated on a daily basis, and will be immediately due and payable daily without notice or demand.

**23. RESIDENTIAL LANDLORD'S LIEN:** Landlord will have a lien for unpaid rent against all of Tenant's nonexempt personal property that is in the Property and may seize such nonexempt property if Tenant fails to pay rent. Subchapter C, Chapter 54, Property Code governs the rights and obligations of the parties regarding Landlord's lien. Landlord may collect a charge for packing, removing, or storing property seized in addition to any other amounts Landlord is entitled to receive. Landlord may sell or dispose of any seized property in accordance with the provisions of §54.045, Property Code.

**24. SUBORDINATION:** This lease and Tenant's leasehold interest are and will be subject, subordinate, and inferior to: (i) any lien or encumbrance now or later placed on the Property by Landlord; (ii) all advances made under any such lien or encumbrance; (iii) the interest payable on any such lien or encumbrance; (iv) any and all renewals and extensions of any such lien or encumbrance; (v) any restrictive covenant; and (vi) the rights of any owners' association affecting the Property.

**25. CASUALTY LOSS OR CONDEMNATION:** Section 92.054, Property Code governs the rights and obligations of the parties regarding a casualty loss to the Property. Any proceeds, payment for damages, settlements, awards, or other sums paid because of a casualty loss to the Property will be Landlord's sole property. For the purpose of this lease, any condemnation of all or a part of the Property is a casualty loss.

**26. SPECIAL PROVISIONS:** *(Do not insert a lease-option or lease-purchase clause without the assistance of legal counsel. Special obligations and liabilities under statute apply to such transactions.)*

Residential Lease concerning: *3305 Spaniel*

## 27. DEFAULT:

A. If Landlord fails to comply with this lease, Tenant may seek any relief provided by law.

B. If Tenant fails to timely pay all amounts due under this lease or otherwise fails to comply with this lease, Tenant will be in default and:
   (1) Landlord may terminate Tenant's right to occupy the Property by providing Tenant with at least one day written notice to vacate;
   (2) all unpaid rents which are payable during the remainder of this lease or any renewal period will be accelerated without notice or demand;
   (3) Landlord may exercise Landlord's lien under Paragraph 23 and any other rights under this lease or the Property Code; and
   (4) Tenant will be liable for:
      (a) any lost rent;
      (b) Landlord's cost of reletting the Property including but not limited to leasing fees, advertising fees, utility charges, and other fees reasonably necessary to relet the Property;
      (c) repairs to the Property for use beyond normal wear and tear;
      (d) all Landlord's costs associated with eviction of Tenant, including but not limited to attorney's fees, court costs, costs of service, and prejudgment interest;
      (e) all Landlord's costs associated with collection of amounts due under this lease, including but not limited to collection fees, late charges, and returned check charges; and
      (f) any other recovery to which Landlord may be entitled by law.

C. Notice to vacate under Paragraph 27B(1) may be by any means permitted by §24.005, Property Code.

D. Landlord will attempt to mitigate any damage or loss caused by Tenant's breach by attempting to relet the Property to acceptable tenants and reducing Tenant's liability accordingly.

## 28. EARLY TERMINATION:
This lease begins on the Commencement Date and ends on the Expiration date unless: (i) renewed under Paragraph 4; (ii) extended by written agreement of the parties; or (iii) terminated earlier under Paragraph 27, by agreement of the parties, applicable law, or this Paragraph 28.

A. <u>Military and Family Violence</u>: Tenants may have special statutory rights to terminate the lease early in certain situations involving family violence or a military deployment or transfer.

   (1) <u>Military</u>: If Tenant is or becomes a servicemember or a dependent of a servicemember, Tenant may terminate this lease by delivering to Landlord a written notice of termination and a copy of an appropriate government document providing evidence of: (a) entrance into military service; (b) military orders for a permanent change of station (PCS); or (c) military orders to deploy with a military unit for not less than 90 days. Termination is effective on the 30th day after the first date on which the next rental payment is due after the date on which the notice is delivered. Section 92.017, Property Code governs the rights and obligations of the parties under this paragraph.

   (2) <u>Family Violence</u>: Tenant may terminate this lease if Tenant obtains and provides Landlord with a copy of a court order described under §92.016, Property Code protecting Tenant or an occupant from family violence committed by a cotenant or occupant of the Property. Section 92.016, Property Code governs the rights and obligations of the parties under this paragraph.

B. <u>Assignment and Subletting</u>:

   (1) Tenant may not assign this lease or sublet the Property without Landlord's written consent.

(TAR-2001) 10-5-05   Tenants:  ____, ____, ____ & Landlord or Landlord's Representative: ____ Page 11 of 14

(2) If Tenant requests an early termination of this lease under this Paragraph 28B, Tenant may attempt to find a replacement tenant and may request Landlord to do the same. Landlord may, but is not obligated to, attempt to find a replacement tenant under this paragraph.

(3) Any assignee, subtenant, or replacement tenant must, in Landlord's discretion, be acceptable as a tenant and must sign: (a) a new lease with terms not less favorable to Landlord than this lease or otherwise acceptable to Landlord; (b) a sublease with terms approved by Landlord; or (c) an assignment of this lease in a form approved by Landlord.

(4) At the time Landlord agrees to permit an assignee, subtenant, or replacement tenant to occupy the Property, Tenant will pay Landlord:

(a) if Tenant procures the assignee, subtenant, or replacement tenant: *with permission*
☐ (i) $_____.
☐ (ii) _____% of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

(b) if Landlord procures the assignee, subtenant, or replacement tenant:
☐ (i) $_____.
☐ (ii) _____% of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

(5) Unless expressly stated otherwise in an assignment or sublease, Tenant will not be released from Tenant's obligations under this lease because of an assignment or sublease. An assignment of this lease or a sublease of this lease without Landlord's written consent is voidable by Landlord.

29. **ATTORNEY'S FEES:** Any person who is a prevailing party in any legal proceeding brought under or related to the transaction described in this lease is entitled to recover prejudgment interest, attorney's fees, costs of service, and all other costs of the legal proceeding from the non-prevailing party.

30. **REPRESENTATIONS:** Tenant's statements in this lease and any application for rental are material representations. Each party to this lease represents that he or she is of legal age to enter into a contract. If Tenant makes a misrepresentation in this lease or in an application for rental, Tenant is in default.

31. **ADDENDA:** Incorporated into this lease are the following addenda, exhibits and other information. If Landlord's Rules and Regulations are made part of this lease, Tenant agrees to comply with the Rules and Regulations as Landlord may, at Landlord's discretion, amend from time to time.

☐ Addendum Regarding Lead-Based Paint
☒ Inventory & Condition Form
☐ Landlord's Additional Parking Rules
☒ Pet Agreement
☐ Protecting Your Home from Mold
☐ Agreement for Application Deposit & Hold
☐ _____

☐ Agreement Between Brokers
☐ Landlord's Rules & Regulations
☐ Owners' Association Rules
☐ Pool/Spa Maintenance Addendum
☐ Residential Lease Application
☐ Residential Lease Guaranty
☐ _____

32. **NOTICES:** All notices under this lease must be in writing and are effective when hand-delivered, sent by mail, or sent by electronic transmission to *(Do not insert an e-mail address or a fax number unless the party consents to receive notices under this lease at the e-mail address or fax number specified.)*:

Tenant at the Property and a copy to:
Stephanie DeLeon
3305 Spanel
Austin TX 78759
E-mail: shkltrit27@gmail.com
Fax: _____

Landlord c/o:
Kbrealton Management
8276 Research #204
Austin, TX 78750
E-mail: kbrealton@hotmail.com
Fax: 52-258-2929

(TAR-2001) 10-5-05      Tenant: _____ , _____ & Landlord or Landlord's Representative: _____      Page 12 of 14

## 33. AGREEMENT OF PARTIES:

A. Entire Agreement: There are no oral agreements between Landlord and Tenant. This lease contains the entire agreement between Landlord and Tenant and may not be changed except by written agreement.

B. Binding Effect: This lease is binding upon and inures to the benefit of the parties to this lease and their respective heirs, executors, administrators, successors, and permitted assigns.

C. Joint and Several: All Tenants are jointly and severally liable for all provisions of this lease. Any act or notice to, refund to, or signature of, any one or more of the Tenants regarding any term of this lease, its extension, its renewal, or its termination is binding on all Tenants executing this lease.

D. Waiver: Landlord's past delay, waiver, or non-enforcement of a rental due date or any other right will not be deemed to be a waiver of any other breach by Tenant or any other right in this lease.

E. Severable Clauses: Should a court find any clause in this lease unenforceable, the remainder of this lease will not be affected and all other provisions in this lease will remain enforceable.

F. Controlling Law: The laws of the State of Texas govern the interpretation, validity, performance, and enforcement of this lease.

G. Copyright: If an active REALTOR® member of the Texas Association of REALTORS® or an active member of the State Bar of Texas does not negotiate this lease as a party or for one of the parties, either as a party's broker or attorney, this lease is voidable at will by Tenant.

## 34. INFORMATION:

A. Future inquires about this lease, rental payments, and security deposits should be directed to the person listed for receipt of notices for Landlord under Paragraph 32.

B. It is Tenant's responsibility to determine, before signing this lease, if: (i) all services (e.g., utilities, connections, schools, and transportation) are accessible to or from the Property; (ii) such services are sufficient for Tenant's needs and wishes; and (iii) Tenant is satisfied with the Property's condition.

C. The brokers to this lease have no knowledge of whether Landlord is delinquent in the payment of any lien against the Property.

D. Unpaid rent and any unpaid amount under this lease are reportable to credit reporting agencies.

E. If all occupants over 18 years of age die during this lease, Landlord may: (i) permit the person named below to access the Property at reasonable times in Landlord's or Landlord's agent's presence; (ii) permit the named person to remove Tenant's personal property; and (iii) refund the security deposit, less deductions, to the named person. Section 92.014, Property Code governs procedures to follow in the event of a tenant's death.

Name: Rene Jones     Phone: 512-944-7901
Address: 138 Shadybrook Dr, Desoto, Tx. 75115
E-mail: rthe.jones@gmail.com

F. The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain areas (see www.txdps.state.tx.us under on-line services). For information concerning past criminal activity in certain areas, contact the local police department.

(TAR-2001) 10-5-05     Tenants: ___ ___ & Landlord or Landlord's Representative: ___     Page 13 of 14

Residential Lease concerning: 3305 Spaniel

G. Landlord's insurance does not cover Tenant from loss of personal property. Landlord recommends that Tenant obtain insurance for casualties such as fire, flood, water damage, and theft. Tenant represents that Tenant ☒ intends ☐ does not intend to purchase such insurance.

H. Landlord's broker, _____
☐ will ☒ will not act as the property manager for landlord.

I. This lease is negotiable between the parties. This lease is binding upon final acceptance. READ IT CAREFULLY. If you do not understand the effect of this lease, consult your attorney BEFORE signing.

_____    11-23-11        _____    11/23/11
Landlord                Date              Tenant                 Date

_____    _____          _____    _____
Landlord                Date              Tenant                 Date

Or signed for Landlord under written property management
agreement or power of attorney
By: _____              _____    _____
                        Date              Tenant                 Date

Printed Name: Kevin Biotwirth              _____    _____
Firm Name: Association Management           Tenant                 Date

Index

| Paragraph | Pg. | Paragraph | Pg. | Paragraph | Pg. | Paragraph | Pg. |
|---|---|---|---|---|---|---|---|
| 1. Parties | 1 | 10. Security Deposit | 3 | 15. Move-In Condition | 6 | 20. Smoke Detectors | 10 |
| 2. Property | 1 | A. Security Deposit | | 16. Move-Out | 6 | 21. Liability | 10 |
| 3. Term | 1 | B. Interest | | A. Move-Out Condition | | 22. Holdover | 10 |
| A. Primary Term | | C. Refund | | B. Definitions | | 23. Landlord's Lien | 10 |
| B. Delay of Occupancy | | D. Deductions | | C. Personal Prop. Left | | 24. Subordination | 10 |
| 4. Renewal & Termination | 1 | 11. Utilities | 4 | 17. Property Maintenance | 7 | 25. Casualty & Condemn. | 10 |
| 5. Rent | 2 | 12. Use & Occupancy | 5 | A. Tenant's General | | 26. Special Provisions | 10 |
| A. Monthly Rent | | A. Occupants | | B. Yard Maintenance | | 27. Default | 11 |
| B. Prorated Rent | | B. Phone Numbers | | C. Pool/Spa | | 28. Early Termination | 11 |
| C. Place of Payment | | C. HOA Rules | | D. Prohibitions | | A. Military & Family Viol. | |
| D. Method of Payment | | D. Prohibitions | | E. Failure to Maintain | | B. Assignment & Sublet | |
| E. Rent Increases | | E. Guests | | 18. Repairs | 8 | 29. Attorney's Fees | 12 |
| 6. Late Charges | 2 | F. Common Areas | | A. Repair Requests | | 30. Representations | 12 |
| 7. Returned Checks | 3 | 13. Parking Rules | 5 | B. Completion of Repairs | | 31. Addenda | 12 |
| 8. Application of Funds | 3 | 14. Access by Landlord | 5 | C. Payment of Repairs | | 32. Notices | 12 |
| 9. Pets | 3 | A. Signs | | D. Trip Charges | | 33. Agreement of Parties | 13 |
| | | B. Access | | E. Advance Payments | | 34. Information | 13 |
| | | C. Trip Charges | | 19. Security Devices | 9 | | |
| | | D. Keybox | | | | | |

(TAR-2001) 10-5-05                                    Page 14 of 14

Receipt 1, image 14 of 14

STATE OF TEXAS          )

COUNTY OF TRAVIS        )

     I, Cathy Mata, Official Court Reporter in and for the County Court at Law No. 1 of Travis County, State of Texas, do hereby certify that the foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

     I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted, tendered in an offer of proof or offered into evidence.

     I further certify that the total cost for the preparation of this Reporter's Record is $209.00 and was paid/will be paid by Mr. Kevin Bierwirth.

     WITNESS MY OFFICIAL HAND this, the 23rd of September, 2013.


     /s/ Cathy Mata
     Cathy Mata, Texas CSR No. 6126
     Expiration Date:  12/31/13
     Official Court Reporter, County Court at Law No. 1
     Travis County, Texas
     P.O. Box 1748, Austin, Texas 78767
     Telephone (512) 854-9252



EXHIBIT 4

CAUSE NO. C-1-CV-12-002167

| | | |
|---|---|---|
| **KBREALTRON MANAGEMENT** | § | IN THE COUNTY COURT |
| *Plaintiff and Appellant* | § | |
| | § | |
| | § | |
| **V.** | § | COUNTY COURT AT LAW NO. 1 |
| | § | |
| **STEPHANIE DELEON** | § | |
| *Defendant and Appellee* | § | TRAVIS COUNTY TEXAS |

## DEFENDANT'S AND APPELLEE'S MOTION TO DISMISS FOR LACK OF JURISDICTION AND BRIEF IN SUPPORT

Defendant and Appellee, Stephanie DeLeon ("Ms. DeLeon"), files this Motion To Dismiss For Lack of Jurisdiction and Brief In Support ("Motion") asking the Court to dismiss Plaintiff's suit with prejudice because the Defendant lacks standing to pursue this action because it was not a landlord at the time of the purported "lease." Moreover, Ms. DeLeon asks the Court to award her all reasonable and necessary attorney fees and costs of court pursuant to Texas Rule of Civil Procedure 749 and 752. In support of which Ms. DeLeon would respectfully show unto the Court as follows:

**I. SUMMARY**

The Plaintiff filed an eviction suit to regain possession of 3305 Spaniel Drive, Austin, Texas 78759 (the "Property"). However, it neither owns the Property nor did it have any possessory interest in it at the time of the purported "lease." The undisputed fact is that the Plaintiff lacks standing to bring this action because it was not landlord at the time of the purported "lease". On April 21, 2011, the 200th Judicial District Court of Travis County, Texas entered an order allowing TIB – The Independent Bankers Bank ("Bank") to foreclose on the Property. On June 7, 2011, the Property was foreclosed upon and sold to the Bank making the Plaintiff a tenant at sufferance. Inexplicably, the Plaintiff then purported to "lease" the Property

DEFENDANT'S AND APPELLEE'S MOTION TO DISMISS FOR LACK OF
JURISDICTION AND BRIEF IN SUPPORT
Cause No. C-1-CV-12-002167; *Kbrealtron Management v. Stephanie DeLeon*    Page 1

173

- which it no longer owned - to the Defendant approximately six months later. Then under the guise of the "lease," the Plaintiff entered the Property and exercised its "rights" and removed approximately $8,000.00 worth of property. Because there was no valid lease, the Plaintiff stole from the Defendant. More importantly, because the Plaintiff was not a landlord it does not have standing to pursue this lawsuit. As such, the Court should dismiss this action with prejudice because no amendment can cure this jurisdiction defect.

## II. MOTION TO DISMISS EVIDENCE

In support of this Motion, Ms. DeLeon relies upon and incorporates by reference the following evidence, which is contained in the Appendix filed herewith.

| | |
|---|---|
| EXHIBIT A | The 200th Judicial District Court Order Allowing Foreclosure |
| EXHIBIT B | The Substitute Trustee's Deed |
| EXHIBIT C | The Purported Lease Agreement |
| EXHIBIT D | Texas Home Equity Security Instrument |
| EXHIBIT E | Travis County Central Appraisal Report on 3305 Spaniel Drive, Austin, Texas 78759 |
| EXHIBIT F | Letter evidencing Plaintiff's Possession of Defendant's Property and Notice to Vacate |
| EXHIBIT G | The Justice of the Peace Order Dismissing Suit With Prejudice |
| EXHIBIT H | Affidavit Of Matthew J. Wagner For Attorney Fees |
| EXHIBIT I | Affidavit of Amanda Ramos |
| EXHIBIT J | Affidavit of Linda Hicks and Redacted Billing Records. |



## III. FACTUAL BACKGROUND

### A.   The Property

On June 24, 2005, Kevin Bierwirth executed a Texas Home Equity Security Instrument ("Deed") securing the Property.[1] Pursuant to the terms of the Deed, if the Property is sold under the Power of Sale provision and not surrendered, the borrower "shall be a tenant at sufferance and may be remove by writ of possession or other court proceeding."[2]

### B.   The District Court Case

On April 21, 2011, the 200th Judicial District Court of Travis County, Texas issued a final order allowing the Bank to foreclose on the Property.[3] This case is currently on appeal presumably based on the trial court's denial of Kevin Bierwirth's request for leave to file a late response to the TIB's motion for summary judgment.[4]

### C.   The Foreclosure Sale And The New Owner

On June 7, 2011, the Bank foreclosed on the Property.[5] Pursuant to the Deed, Kevin Bierwirth, as well as any person residing at the Property, became a tenant at sufferance.[6] Moreover, the Travis County Central Appraisal District's records reflect that the Bank – not the Plaintiff – owns the Property.[7]

---

[1] Exhibit D.

[2] Exhibit D, ¶ 22.

[3] Exhibit A. Defendant asks the Court to take judicial notice that on April 21, 2011 the 200th District Court entered a final order granting TIB's motion for summary judgment and allowing foreclosure on the property.

[4] Exhibit A, ¶3, ln. 6 (The Court denied Kevin Bierwirth's motion for leave to file a response). The Case No. in the 3rd Court of Appeal is 03-11-00336-CV.

[5] Exhibit B.

[6] See fn. 2 supra.

[7] Exhibit E.

175

### D. The "Lease" Agreement

On November 23, 2011, the Plaintiff and Ms. DeLeon purportedly entered into a lease agreement for the Property.[8] However, at this time the Plaintiff did not own the property or hold any possessory interest in it because of the foreclosure sale on June 7, 2011. Therefore, the Plaintiff had no legal authority to unilaterally lease the Property to Ms. DeLeon.

### E. The Theft of Defendant's Property & Notice to Vacate

On January 17, 2012, the Plaintiff entered the Property and took approximately $8,000.00 of Ms. DeLeon's and her mother's property under a non-existent landlord's lien. Along with helping itself to the personal property it posted a notice to vacate letter giving the Defendant only 1 day to vacate.[9]

### F. The Justice Of The Peace Eviction Case

On February 2, 2012 the Justice of the Peace dismissed Plaintiff's eviction action with prejudice.[10]

## IV. LEGAL STANDARD

The purpose of a plea to jurisdiction is to dismiss a cause of action without regard to whether the claim has merit. *Bland ISD v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The Court must decide whether the plaintiff has affirmatively demonstrated this Court's jurisdiction to hear this suit, based on the facts alleged by plaintiff, and when necessary to resolve jurisdictional facts, on evidence submitted by the parties. *See State v. Holland*, 221 S.W.3d 639, 642-43 (Tex. 2007); *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555; *see, e.g., State v. Sledge*, 36 S.W.3d 152, 155

---

[8] Exhibit C.
[9] Exhibit F.
[10] Exhibit G.

176

(Tex.App.-Houston [1st Dist.] 2000, pet. denied) (trial court conducted hearing and received oral testimony, affidavits, exhibits, and stipulations).

Standing is a component of subject matter jurisdiction and must be resolved by the Court prior to this case moving any further. *See Texas Ass'n of Bus. V. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993).

## V. SUMMARY OF ARGUMENT

The Plaintiff's law suit should be dismissed with prejudice because it does not have standing pursue the action. The Plaintiff was not a landlord because it did not hold a possessory interest in the Property at the time of the purported "lease." As such, the Plaintiff cannot establish an essential element of its forcible detainer action – the Landlord-Tenant relationship. Because no amendment can cure this glaring jurisdictional defect Plaintiff's lawsuit should be dismissed with prejudice. Moreover, because Ms. DeLeon had to hire legal representation to defend the forcible detainer action in the Justice Court and this Court she is entitled to reasonable and necessary attorneys fee under Texas Rule of Civil Procedure 749 and 752.

## VI. ARGUMENTS & AUTHORITIES

### A. The Plaintiff Was Not A Landlord At The Time Of The Purported Lease.

The undisputed fact is that Plaintiff was not a landlord at the time of the purported lease. To be a landlord in Texas, a person or entity must (1) own a possessory interest in real property, (2) be able to legally lease that interest to another, and (3) retain a reversionary interest in the lease property. A tenant at sufferance cannot be a landlord because it does not have a possessory interest in the real property. *See ICM Mortg. Corp. v. Jacob*, 902 S.W.2d 527, 530 (Tex.App.-El Paso 1994, writ denied) (tenant at sufferance does not own property interest capable of

177

assignment); *Griffin v. Reynolds*, 107 S.W.2d 634, 637 (Tex.App.-Texarkana 1937, writ dism'd) (same).

### 1. The Plaintiff never held a possessory interest in the Property at the time of the purported lease because he was a tenant at sufferance.

The Plaintiff never held a possessory interest in the Property at the time of the purported lease because he was a tenant at sufferance. A possessory interest in property is the right to possess property to the exclusion of others. *Black's Law Dictionary* 1284 (9th ed. 2009). A tenant at sufferance does not own a possessory interest in property and is merely an occupant "in naked possession of property" that is not in privity with the owner and possesses no assignable interest. *ICM Mortg. Corp. v. Jacob*, 902 S.W.2d 527, 530 (Tex.App.-El Paso 1994, writ denied); *Goggins v. Leo*, 849 S.W.2d 373, 377 (Tex.App.-Houston [14[th] Dist.] 1993, no writ) (no privity); *Griffin v. Reynolds*, 107 S.W.2d 634, 637 (Tex.App.-Texarkana 1937, writ dis'md) (not assignable). As long as the deed of trust states that the purchaser becomes a tenant at sufferance, that purchaser of real property who continues to occupy the property after default and foreclosure is a tenant at sufferance. *See Elwell v. Countrywide Home Loans, Inc.*, 267 S.W.3d 566, 568 (Tex.App.-Dallas 2008, pet. dism'd).

On June 7, 2011, the Plaintiff became a tenant at sufferance because of the foreclosure sale.[11] As such, the Plaintiff never held a possessory interest in the Property at the time of the purported "lease". Therefore, Plaintiff could not have legally leased the Property to Ms. DeLeon.

---

[11] See Exhibit B

178

**B.     The Plaintiff Was Not A Landlord At The Time Of The Purported Lease; Therefore, It Does Not Have Standing To Pursue The Forcible Detainer Action.**

The Plaintiff was not a landlord at the time of the purported lease; therefore, it does not have standing to pursue the forcible detainer action. In Texas, a landlord has to prove the following essential elements to succeed on a forcible detainer action: 1) **there is a landlord-tenant relationship between the parties**, 2) the tenant can be evicted because the tenant is a holdover tenant, a tenant at will, a tenant at sufferance, or a tenant of a person who acquired possession by forcible entry, 3) the landlord made a proper demand for possession, 4) the time period to vacate the property has expired, and 5) the tenant has refused to surrender possession to the landlord. TEX. PROP. CODE §24.002 (elements 1-5) (emphasis added). If there is no landlord-tenant relationship between the parties, there can be no forcible detainer action.

*1.     There was not a landlord-tenant relationship between the Plaintiff and Ms. DeLeon.*

As detailed more particularly above, the Plaintiff cannot demonstrate that it was a landlord because at the time of the "lease" it did not own a possessory interest in the Property. Specifically, by way of the foreclosure sale, it was at most a tenant at sufferance which is not a possessory interest at all. Because the Plaintiff was not a landlord at the time of the "lease" it does not have standing to pursue this action.

**C.     Ms. DeLeon Is Entitled To Reasonable Attorney Fees And Costs Of Court Under Texas Rules Of Civil Procedure 749 And 752.**

Ms. DeLeon is entitled to reasonable attorney fees and costs of court under Texas Rules of Civil Procedure 749 ("Rule 749") and 752 ("Rule 752"). *See* TEX. R. CIV. P. 749, 752. Specifically, under Rule 749 Kbrealtron is required to post bond to as security to ensure that it will prosecute his appeal with effect and pay all costs and damages which may be adjudged against on appeal. TEX. R. CIV. P. 749. Under Rule 749 the court must set the amount of the

179

bond to include all items enumerated in Rule 752. *Id.* Under Rule 752 the damages that are recoverable include that of reasonable and necessary attorney fees in the justice and county courts. TEX R. CIV. P. 752; *see also Krull v. Somoza*, 879 S.W.2d 329, 332 (Tex.App.—Houston [14th Dist.] 1994, writ denied (stating that [d]amage claims related to maintain or obtaining possession of the premises may be joined with the detainer action and litigated in the county court).

As a result of the Plaintiff filling the forcible detainer action and appealing to the county court, Ms. DeLeon has sustained damages, including that of attorney fees.[12] Therefore, after hearing, Ms. DeLeon requests the Court award her all reasonable and necessary attorney fees for defending this action along with all costs of court.[13]

## VII. CONCLUSION

Plaintiff has no standing to pursue this action because it was not a landlord. Plaintiff had no possessory interest in the Property at the time of the purported lease. As such, the Defendant respectfully requests that Plaintiff's lawsuit be dismissed with prejudice because no amendment to the suit can cure the jurisdictional defect. Moreover, because Ms. DeLeon was required to defend this action in the justice court and in this Court, she is entitled to the recovery of her attorney fees and costs after the case is dismissed.

## VIII. PRAYER

Based on the preceding, Ms. DeLeon prays that the Plaintiff suit be dismissed with prejudice based on standing grounds and after hearing be awarded all of her reasonable and necessary attorney fee and costs of court and all other relief she is justly entitled.

---

[12] Exhibit H.
[13] Id.

180

Respectfully submitted,

HALL ATTORNEYS, P.C.

/s/ *MATTHEW J. WAGNER*

Nicholas Andrew Hall
State Bar No.: 24069863
Ron Satija
State Bar No.: 12128400
Matthew J. Wagner
State Bar No.: 24075232
701 Brazos, Suite 500
Austin, Texas 78701
phone: (512) 551-3041
fax:  (512) 692-2833
**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

The undersigned certifies that the preceding was served on all counsel of record on April 11, 2012.

**EMAIL**
Jeff Kelly
Kelly Legal Group
4608 South Lamar Blvd.
Austin, Texas 78745

/s/ *MATTHEW J. WAGNER*
Matthew J. Wagner

181

MR. WAGNER: Yes, Your Honor.

I'd like to call Ms. DeLeon to the stand.

THE COURT: Okay. Ms. DeLeon, come on up.

Can I have you raise your right hand.

(Witness sworn)

THE COURT: Please come up and have a seat.

MR. WAGNER: Your Honor, would you like me to stand, sit?

THE COURT: You can sit.

STEPHANIE DELEON,

having been first duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. WAGNER:

Q. Ms. DeLeon, please state your name for the record.

A. Stephanie Dina DeLeon.

Q. And where do you currently live or reside?

A. 3305 Spaniel Drive, Austin, Texas 78759.

Q. And how long have you lived there?

A. Since December 17th, 2011.

Q. And what led you to select this property?

A. It met all my requirements, my daughter's school district, my price range, and having three bedrooms so that I could have a place to do my schoolwork. And there's -- I searched for six months

A. Yes, I did.

Q. And who else signed that document?

A. Kevin Bierwirth.

Q. And how do you know that he signed that document?

A. He signed it in front of me on that day.

MR. WAGNER: Your Honor, I move to introduce Plaintiff's Exhibit Number 1.

(Plaintiff's Exhibit No. 1 offered)

MR. KELLY: No objection, Your Honor.

THE COURT: 1 will be admitted.

(Plaintiff's Exhibit No. 1 admitted)

Q. (BY MR. WAGNER) And prior to entering into that lease, had you had any conversations with the Defendant, Mr. Bierwirth?

A. Yes.

Q. And what were the contents or -- what were the contents of those conversations?

A. On the day that we actually showed the property, he had mentioned that the house was in a foreclosure process, and that it could sometimes take up to two years. And that if for any reason the bank actually finalized the foreclosure and needed me out of the property, then I would be getting back my full deposit.

Filed
12 August 15 A11:05
Dana DeBeauvoir
County Clerk
Travis County

CAUSE NO. C-1-CV-12-002167

| | | |
|---|---|---|
| **KBREALTRON MANAGEMENT** | § | IN THE COUNTY COURT |
| *Plaintiff and Appellant* | § | |
| | § | |
| | § | |
| V. | § | COUNTY COURT AT LAW NO. 1 |
| | § | |
| **STEPHANIE DELEON** | § | |
| *Defendant and Appellee* | § | TRAVIS COUNTY TEXAS |

## MOTION TO WITHDRAW

Movant, Hall Attorneys, P.C. and its attorneys ("Hall") files its *Motion to Withdraw* as counsel for Defendant, Stephanie DeLeon. In support, Hall shows the following:

**I.     Procedural History**

1.     On February 2, 2012, Kbrealtron Management's ("Kbrealtron") eviction proceeding was dismissed by the Justice of the Peace Court (the "Justice Court").

2.     On February 23, 2012, Kbrealtron perfected its appeal to this Court.

3.     On February 29, 2012, the Court received the documents filed in the Justice Court.

4.     The eviction proceeding is still pending in the Court.

5.     No deadlines or settings are presently on the Court's docket, save and except, the hearing on this motion.

6.     Movant has served Defendant by certified mail and regular mail at her last known address as indicated in the certificate of last known address.

7.     Movant has notified Defendant of its intention to withdraw from this case and has informed Defendant of her right to object to this motion.

8.     Based on information and belief, Defendant objects to this motion.

311

## II.    Arguments & Authorities

9.    Movant seeks to withdraw pursuant to Texas Rule of Civil Procedure 10. Specifically, there is good cause for withdrawal because the Defendant has substantially failed to fulfill an obligation to Hall and has been given reasonable warning that Hall will withdraw unless the obligation is fulfilled.

WHEREFORE, Movant, Hall Attorneys, P.C. and its attorneys pray the Court grant its Motion to Withdraw, relieve it and its attorneys of any further obligations, and for all other relief it is justly entitled.

Respectfully submitted,

HALL ATTORNEYS, P.C.

/S/ MATTHEW J. WAGNER
Nicholas Andrew Hall
State Bar No.: 24069863
Ron Satija
State Bar No.: 12128400
Matthew J. Wagner
State Bar No.: 24075232
701 Brazos, Suite 500
Austin, Texas 78701
phone: (512) 551-3041
fax: (512) 692-2833

3|2

## CERTIFICATE OF SERVICE

The undersigned certifies that the preceding was served on all counsel of record on August 15, 2012 and on all parties via the manner described below.

**EMAIL**
Jeff Kelly
Kelly Legal Group
4608 South Lamar Blvd.
Austin, Texas 78745

**CMRRR AND FIRST CLASS MAIL**
Stephanie DeLeon
4108 Kilgore Lane
Austin, Texas 78727

/s/ *MATTHEW J. WAGNER*
Matthew J. Wagner

## CERTIFICATE OF LAST KNOWN ADDRESS

The undersigned certifies that the last known address for Stephanie DeLeon is 4108 Kilgore Lane, Austin, Texas 78727.

/s/ *MATTHEW J. WAGNER*
Matthew J. Wagner

## NOTICE OF HEARING

Please take notice that a hearing on this Motion has been set on August 28, 2012 at 9:00 a.m. in Travis County Court No. 1.

/s/ *MATTHEW J. WAGNER*
Matthew J. Wagner

313

CAUSE NO. C-1-CV-12-002167

| | | |
|---|---|---|
| **KBREALTRON MANAGEMENT** | § | **IN THE COUNTY COURT** |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **AT LAW #1** |
| | § | |
| **STEPHANIE DELEON** | § | |
| **Defendant** | § | **TRAVIS COUNTY, TEXAS** |

FILED FOR RECORD
2013 MAR -5 PM 2: 47
DANA DEBEAUVOIR
COUNTY CLERK
TRAVIS COUNTY, TEXAS

### MOTION FOR POSSESSION OF PROPERTY AND UNPAID RENT

COMES NOW, KBREALTRON MANAGEMENT, by and through its agent Kevin Bierwirth, and files this motion for trial de nova seeking judgment against Defendant Stephanie DeLeon for possession of his rental property and unpaid rent due Plaintiff.

Defendant leased the property, the lease to begin on December 17, 2011, in the amount of $1200.00 per month, with a security deposit of $1200.00.

Defendant took possession of the property on December 17, 2011, and to date has not paid either rent or the security deposit.

Plaintiff found it necessary to execute a Landlord's Lien in an attempt to obtain rent, however, Defendant abandoned the personal property which was the subject of the Lien.

Defendant abandoned the property without notice sometime after May 1, 2012.

Plaintiff asks the court to award $10,055.42 in rent, security deposit and associated costs, and attorney's fees in the amount of $2,500.00.

Respectfully submitted,

KBREALTRON MANAGEMENT
By Kevin Bierwirth
13276 Research Blvd. Ste. 204
Austin, Texas 78750
(512) 582-1031

320

STATE OF TEXAS                }

                                       }SS

TRAVIS COUNTY              }

## AFFIDAVIT OF BUSINESS RECORDS

I, Kevin Bierwirth, attest that I am an agent for KBREALTRON MANAGEMENT. That I was present when Stephanie DeLeon signed a lease to rent property at 3305 Spaniel Drive, Austin, Tx 78759.

I can attest that during her stay in the property, Ms. DeLeon did not pay the security deposit nor any rent whatsoever.

I gave Ms. DeLeon notice to pay, as per the lease, or I would be forced to execute a Landlord's Lien and seize personal property in lieu of payment of rent. Ms. DeLeon ignored the Notice, I entered the property and took several items in personal property, including a washer and dryer, and three computers.

Ms. DeLeon never redeemed the property and refused to abandon the premises.

It was necessary for me to rent a storage unit in which to store Ms. DeLeon's personal property, pending her payment of rent.

Ms. DeLeon, at some point, abandoned the property, without notice to me, and after learning of the abandonment, I had the property painted, cleaned and fixed to the condition in which it was at the time of Ms. DeLeon's occupancy.

Because of the difficulties caused by Ms. DeLeon and her attorney, it has been necessary for me to engage the services of an attorney to attempt to evict her and deal with the retaliatory actions Ms. DeLeon took in order to occupy the property rent free.

I am aware that KBREALTRON MANAGEMENT paid $2,500 retainer for attorney services to assist in the legalities in which Ms. DeLeon engaged.

It was my job to keep a running total of the expenses incurred in the lease of the property and attempts to evict Ms. DeLeon. The expense report attached to this Affidavit is true and correct.

Kevin Bierwirth

SWORN AND SUBSCRIBED before me by Kevin Bierwirth on March 1, 2013.

Notary Public

KAREN MELISSA TURNER
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES
07-01-2016

321

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the attached Motion for Possession of Property and Unpaid Rent was sent on March 2, 2013 to:

Stephanie DeLeon
4108 Kilgore Lane
Austin, TX 78727

322